LEWISTON *vs.* JOHN E. GAGNE, and others.

Androscoggin.    Opinion December 19, 1896.

*Official Bond. Alteration. Surety. Release. Mistake.*

One who signs an official bond at the request of the principal, thereby, *qua* the obligee, gives him implied authority to procure additional sureties to make the bond satisfactory to the obligee, and it makes no difference when the additional sureties are obtained; and any representations by the principal to a surety that certain other persons are also to sign as sureties who do not, will not release such surety.

When a surety has once signed an official bond, and the bond has been accepted by the obligee, nothing short of information to him of such a character that, in the exercise of prudence would require a withholding of official duties from the principal, can release the surety.

Notice by sureties of their claim to be relieved from an official bond by reason of the principal having procured an additional surety, will not have any effect after the approval of the bond.

When all parties agree, in a case submitted on report, that a mutual mistake exists in the condition of the bond in suit, it may be corrected in equity before damages shall be assessed.

ON REPORT.

The case is stated in the opinion.

*F. L. Noble and R. W. Crockett,* for plaintiff.

*J. W. Mitchell, W. H. Newell* and *W. B. Skelton; D. J. McGillicuddy; W. H. White* and *S. M. Carter; J. G. Chabot, A. R. Savage* and *H. W. Oakes,* for defendants.

Counsel cited: *Smith* v. *United States,* 2 Wall. 219; *Miller* v. *Stewart,* 9 Wheat. 681; *Woodworth* v. *Bank,* 19 Johnson, 391, (10 Am. Dec. 267, note;) *Chadwick* v. *Eastman,* 53 Maine, 12; *Hewins* v. *Cargill,* 67 Maine, 554; *Waterman* v. *Vose,* 43 Maine, 504; *Lee* v. *Starbird,* 55 Maine, 491; *Croswell* v. *Labree,* 81 Maine, 44; *Dover* v. *Robinson,* 64 Maine, 183; *Doane* v. *Eldridge,* 16 Gray, 254; *Miller* v. *Finley,* 26 Mich. 249, (12 Am. Rep. 306); *Mersman* v. *Werges,* 112 U. S. 139; *Barrett* v. *Thorndike,* 1 Maine, 73; *Pigot's case,* 11 Co. 27; *Markham* v. *Gonaston,* Cro. El., 626; 1 Shep. Abridg. 541; Shep. Touchstone, 69; *O'Neale* v. *Long,* 4 Cranch, 60; *Lewis* v. *Payn,* 8 Cow. 71; *Vanauken* v. *Hornbeck,* 2 Green, (N. J. Law,) 178; *Brackett* v. *Mountfort,* 11 Maine, 115; *Farmer* v. *Rand,* 14 Maine, 225; *Sheridan* v. *Carpenter,* 61 Maine, 83; *Aldrich* v. *Smith,* 37 Mich. 468; *Hamilton* v. *Hooper,* 46 Iowa, 515, (26 Am. Rep. 161); *Wallace* v. *Jewett,* 21 Ohio St. 163; *Smith* v. *Weld,* 2 Pa. St. 54; *Fairhaven* v. *Cowgill,* 8 Wash. 686; *Gardner* v. *Walsh,* 5 E. & B. 83, overruling *Cotton* v. *Simpson,* 8 A. & E. 136; *Booth* v. *Powers,* 56 N. Y. 30; *Montgomery* v. *Crosthwait,* 90 Ala. 553; *Singleton* v. *McQuerry,* 85 Ky. 41; *Honck* v. *Graham,* (Ind.) 3 West, 670; *Robinson* v. *Berryman,* (Mo. App.) 3 West, 905; *State* v. *McGonigle,* 101 Mo. App. 353, (20 Am. Rep. 609); *Anderson* v. *Bellenger,* 87 Ala. 334, (13 Am. St. Rep. 46); *Hewey* v. *Coates,* 17 Ind. 161; *Bowers* v. *Briggs,* 90 Ind. 139; *Browser* v. *Rendall,* 31 Ind. 178; *Crandall* v. *Bank,* 61 Ind. 349; *McVean* v. *Scott,* 56 Barb. 379; *Reese* v. *U. S.* 9 Wall. 13; *Dolbier* v. *Norton,* 17 Maine, 307; *McCoughey* v. *Smith,* 27 N. Y. 39; *Shipp* v. *Suggett,* 9 B. Monroe, 5; *Hall* v. *McHenry,* 19 Iowa, 521; *Dickerman* v. *Miner,* 43 Iowa, 508; *Sullivan* v. *Radsil,* 63 Iowa, 158; *Martin* v. *Thomas,* 24 How. 315, 317; *Sharp* v. *U. S.* (28 Am. Dec. 676, note); *King* v. *Smith,* 2 Leigh, 157; *Fertig* v. *Bucher,* 3 Pa. St. 308; *Howe* v. *Peabody,* 2 Gray, 556; *Franklin Bank* v. *Stevens,* 39 Maine, 532, 539; *Bryant* v. *Crosby,* 36 Maine, 562, 571; *Rutledge* v. *Town-*

*send*, 88 Ala. 706; 1 Greenl. Ev. 565; 1 Am. and Eng. Enc. 506; 2 Daniel, Neg. Inst. 350; 3 Randolph, Com. Paper, 859; 2 Pars. Notes and Bills, 539; Brandt, Surety, 9.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, STROUT, JJ.

HASKELL, J. Debt upon the bond of a collector of taxes. The declaration calls for the penal sum of the bond as damages without suggesting that any condition whatever is contained in the bond. The action is against the principal and five sureties. The first four sureties plead non est factum. Under this plea they assert an assurance by the principal, at the time they signed the bond, that certain persons were to become sureties who did not do so. Failure to procure those persons as sureties could not affect the liability of the four sureties who did sign. They may have been deceived by their principal, but the obligee is innocent of the deception and should not be affected thereby, otherwise it could not safely accept an apparently good bond when presented for approval. *State* v. *Peck*, 53 Maine, 284.

By brief statement the four sureties also say, that they signed the bond " on or about the second day of June, 1893," and that it was on that day " approved and accepted " and " placed in the files of the papers of the City of Lewiston," the obligee. This statement makes it the valid bond of the principal and these four sureties. These sureties further plead that thereafterward the obligee procured the fifth surety, thereby altering the bond in a material particular and destroying its validity. The evidence does not fully support these averments. The record of the meeting of the board of mayor and aldermen, June 2, reads: " Bond of J. E. Gagne accepted and approved." . . . " Voted to adjourn to June 14, at 7.30 P. M." At that meeting: " The matter of requiring extra bonds of the tax collector referred to Messrs. Barker and Provost." In pursuance of this vote it is to be inferred that the collector was called upon to furnish another surety, for that surety testifies:

Q.  "How came you to sign the bond?

A.  "Gagne asked me if I was going to sign the bond.  I told him I would see who was on, and see what I would do.  The next morning he came to me, and said will you sign the bond?  I said I will see; he said the bond is down to Reny's.  I said I will go down and see; he says, Provost and Auger are going to sign the bond.  I said, Provost is going to be on there?  He says, yes; and Auger? he says, yes.  I went down there and went to the store.  L'Heureux and I had some conversation together; then he presented the bond; L'Heureux says, will you sign the bond?  I said, I don't think I will; he says, why?  Said I, I want a few more names on.  He says, Provost is going to sign.  After he told me that Provost was going to sign, well, says I, if Provost signs, I will sign.  I did sign it.

Q.  "You declined to sign until you were assured by Mr. L'Heureux that Mr. Provost was going to sign?

A.  "Yes, sir.

Q.  "Was that the inducement that made you sign the bond?

A.  "Yes, sir.

Q.  "His assurance?

A.  "Yes, sir."

From this evidence it appears that the collector applied to the surety to sign his bond and assured him that certain other persons were also to sign who did not, and told him that the bond was at Reny's store, and the surety said he would go down and see.  One of the aldermen, other than those to whom the matter had been referred, produced the bond and after assuring him that the other persons named by the collector were going to sign, and upon the strength of that assurance he signed it.  This representation originally was made by the collector, and as the bond could not properly be intrusted to strangers, the aldermen who had the matter in charge for the city undoubtedly intrusted it to one of their associates as the collector's friend to enable him to procure the additional surety.  To compass this result, the bond was produced by the alderman to whom it had been loaned, not as an agent of the city, but as a friend of the collector; and any repre-

sentations of the collector repeated by this alderman were in no sense representations of the city. They were representations of the collector only, and therefore the fact pleaded, that the city procured the fifth surety, is not proved; so that the question is, whether the procurement of an additional surety by the collector himself releases the four sureties who had already signed the bond.

One who signs an official bond as surety, at the request of the principal, thereby, *qua* the obligee, gives him implied authority to procure additional sureties to make the bond satisfactory to the obligee. That is the only practical way to procure an official bond, and it makes no difference when the additional sureties are obtained. If the bond be approved by the obligee, and before the principal enters upon the duties of his office, at the request of the obligee, the principal procures additional sureties, the act comes within the implied authority given when the existing sureties executed the bond on their part. The proceedings would be wholly for their benefit, and not change the obligation between the obligor and obligee in the slightest particular, and upon no principle of law can it be said to destroy the bond. The defense of the four sureties, that a fifth had been added after the bond had once been approved and before the principal entered upon the duties of his office, must fail. Nor, after the approval of the bond and before the commitment of taxes, can notice by these sureties of their claim to be relieved by reason of procuring a fifth surety have any effect. They had become legally bound for the official conduct of the collector. Nothing short of information that would require the city government, in the exercise of proper prudence, to withhold the commitment of taxes from the collector could relieve them from liability on their bond. It is not pretended that any such information was furnished, nor that any facts existed that would warrant such action by the city. This defense therefore must fail.

The fifth surety defends upon the ground of being induced to sign by reason of the assurance that certain other persons were also to sign. As before shown, this defense cannot prevail, inasmuch as it was not the inducement of the obligee.

All the sureties plead that the bond contained a condition for

the faithful performance of official duty for the municipal year "ensuing the month of March, 1894," and that the principal has performed the same. All the parties agree that the bond was intended for the municipal year "ensuing" the month of March, 1893, and supposed that it was so conditioned. It is a clear case of mutual mistake which equity corrects. This case is on report with a stipulation that, if damages are recoverable, they may be assessed below as upon motion to chancer the penalty of the bond.

We are satisfied that the bond is the valid deed of all the defendants and that the plaintiff should recover damages. To this end a default should be entered, in order that, on process in equity, the bond may be corrected, unless the parties may so agree, after which appropriate damages may be assessed.

*Defendants defaulted.*

*Damages to be assessed below.*