## KEILSOHN *v.* SLATON, Governor, *et al.*

A scire facias issued for the purpose of forfeiting a criminal recognizance against the principal and three sureties. An entry of non est inventus was made as to the principal. One of the sureties alone filed an answer, alleging in substance as follows: At the instance and procurement of another of the sureties he signed the bond, "said bond, however, being

at that time merely a blank form of bond, without any entries thereon, and without any other signatures thereto." The cosurety represented to the defending surety that the instrument was to be a bond for the release of the principal. The bond, signed by the principal and by the cosurety mentioned and by the defending surety, was presented to the deputy sheriff, and was rejected by him on the ground that it was insufficient, the sureties then signing it not being satisfactory. After this the cosurety, without the knowledge, consent, or authority of the defending surety, procured a third person to sign the bond as a surety. It was then accepted by the deputy sheriff. Wherefore the defending surety claimed not to be liable. *Held*, that there was no error in striking such answer on demurrer.

DECEMBER 15, 1915.

Forfeiture of recognizance. Before Judge Thomas. Fulton superior court. December 17, 1914.

A scire facias issued for the forfeiture of a criminal recognizance against L. Weinberg as principal, and W. F. Brandt, N. E. Keilsohn, and Charles E. Thompson as sureties. An entry of non est inventus was made as to the principal, and the sureties were served. Keilsohn alone filed an answer. He averred, that, at the instance and procurement of Brandt, he signed the bond, "said bond, however, being at that time merely a blank form bond, without any entries thereon, and without any other signatures thereto." Brandt represented to him "that said bond was to be a bond for the release of the principal therein." The bond, signed by the principal and by Brandt and Keilsohn as sureties, was presented to a deputy sheriff, and was rejected by him on the ground that it was insufficient, the sureties then signing it not being satisfactory. After this Brandt, without the knowledge, consent, or authority of Keilsohn, procured Thompson to sign the bond as a surety. The bond was then accepted by the deputy sheriff. Keilsohn therefore claims not to be liable.

On demurrer this answer was stricken, and a rule absolute was entered. Keilsohn excepted.

*Hewlett, Dennis & Whitman,* for plaintiff in error.

*Hugh M. Dorsey,* solicitor-general, *J. Walter LeCraw,* and *E. A. Stephens,* contra.

LUMPKIN, J. (After stating the foregoing facts.) A question quite similar to that here involved recently received consideration in *Clark* v. *Macon Telegraph Publishing Co.,* 143 *Ga.* 278, 281 (84 S. E. 577). The diversity in the views of the courts on the

subject of whether the addition of a surety to a bond after its complete execution and delivery, or even after execution but before complete delivery, without the knowledge or authority of the original sureties, will discharge them, was there mentioned, as well as the distinction drawn by some authorities between adding a surety to such an instrument after it has been completely executed and delivered, and after it has been signed by the principal and one or more sureties, but has not been delivered and given effect as a complete instrument, and is in an inchoate state and entrusted to the principal (or equally to one of the sureties) to be used so as to accomplish the purpose for which it is intended. It was there further noted that in *Taylor* v. *Johnson,* 17 *Ga.* 521, the point was discussed, but not decided. In the last-cited case a sheriff's bond was executed, and was examined and approved by the judge of the superior court, upon a named additional surety signing it in the presence of the clerk, and it was ordered to be entered on the minutes. The additional surety signed in the presence of the clerk. The bond does not appear to have been positively rejected and returned to the makers, but was retained and approved with the provision for the additional security. Whether the principal or any of the other sureties knew of this, or had anything to do with it, does not appear. The objection raised to the admission of the bond in evidence was, that, under the act of 1845, the judge was not authorized to require the bond to be strengthened, and that the bond so altered did not bind either the original sureties or the new one.

In *Lewis* v. *Board of Commissioners,* 70 *Ga.* 486, where the bond of a county treasurer was absolute on its face, and it did not appear, either from it or from any other writing prior to or contemporaneous therewith, that it was left with the ordinary on the condition and understanding that it was not to be then delivered or considered as accepted by him until certain other sureties should sign it, which was never done, but the principal obtained his commission as county treasurer, and received the public revenue, for which he failed to account, it was held that the sureties could not set up by way of defense that they had left the bond in the hands of the officer authorized to receive it upon such a condition; and that the ordinary had no authority to agree thereto.

In *Mathis* v. *Morgan,* 72 *Ga.* 517 (53 Am. R. 847), the facts

on which the court based the decision were stated as follows: A surety on a bond given to the State as security for a bank depository signed it before another surety, whose name preceded his in the body of the bond, but was forged thereto in the signature. The name of the same person, as well as that of another, whose name appeared before that of the surety first mentioned above in the body of the bond, appeared as having signed an affidavit that the two were worth a certain sum; but the affidavit was forged. The surety first above mentioned, who was attacking the validity of the bond, entrusted it to the president of the bank as an escrow, not to be delivered to the State until the other sureties mentioned should execute it. Nevertheless the president delivered it to the Governor, the obligee, with all the signatures thereon apparently genuine; and the bank acted as a State depository. Upon a breach of the bond by the bank, it was held that such surety was not discharged from responding to the State by reason of the facts stated.

In *Brown* v. *Colquitt*, 73 *Ga.* 59 (54 Am. R. 867), where several criminal recognizances were to be given, and the same surety agreed to sign all of them and did so, some of them being filled out at the time, and some of them having the name of the obligee and the amount blank, and the surety instructed the sheriff to fill such blanks, knowing the amount and the obligee, and thereupon left, and the blanks were filled accordingly, and the instruments were acted on by the sheriff as being proper recognizances, it was held that such a bond was binding on the surety. Mr. Justice Blandford, who delivered the opinion, referring to the plea of the surety which set up that the bond was not binding upon him because it was thus executed, said: "Under the facts of this case, to allow his plea would be to allow him to perpetrate a fraud on the public."

In the case at bar the answer of the surety to the scire facias showed, that the other surety to the bond represented to him that it was to be a bond "for the release of the principal;" that he signed it at the instance of his cosurety for that purpose, it being at that time merely a blank form of bond with no other signatures; that he is informed that the bond signed by the principal, the other surety, and himself was tendered to the deputy sheriff, and was rejected because the sureties then signing it were not satisfactory; that the cosurety of the plaintiff in error procured another

surety to sign it; and that it was then accepted and approved. The answer does not present the case of a complete instrument which had been delivered and accepted, and to which an additional surety was subsequently added without the consent of those who originally signed it; and we need not consider whether, in such a case, the original sureties would be discharged, or whether the question of injury to them would be involved in determining that question. Here the bond did not become operative until accepted by the sheriff or his deputy. It was not a completed contract, but was one in process of being made. The plaintiff in error knew that the object was to make a recognizance which would effect the release of the principal. He entrusted the instrument signed by him, which. he called in his answer a blank form of bond, to his cosurety for that purpose. It accomplished the purpose, with the added surety, and the principal obtained his freedom. There is no pretense that the deputy sheriff knew that the additional surety was added without the knowledge or consent of the plaintiff in error, or without his authority, if such were the fact. If it had been incumbent on the officer to hunt up the plaintiff in error and ascertain whether his cosurety was authorized to thus make the bond acceptable for the purpose for which it was being executed, not by changing any of its conditions, but by simply adding another surety, it would have been necessary to have retained the principal in custody while the sheriff or his deputy communicated with the plaintiff in error. In such a case there might have been a number of sureties residing at different points in the county, not readily accessible, and the sheriff or his deputy would have had to hunt up each of them to ascertain whether the surety, who was entrusted with the bond for the purpose of obtaining the release of the principal, was exceeding his authority or acting without their consent. The plaintiff in error, who thus entrusted the instrument signed by him to his cosurety, knowing that the sureties signing it must be acceptable to the sheriff, or the deputy representing him in the matter, before it became effective, and that the instrument was to be a criminal recognizance for the purpose of obtaining the release of the principal, ought not to be allowed to thus participate in obtaining that result, and to then repudiate the recognizance when it is sought to be forfeited. As Mr. Justice Blandford said in the case of *Brown* v. *Colquitt,* supra, to so hold would be to allow the plaintiff in error

to perpetrate a fraud on the public. See, in this connection, Lewiston v. Gagne, 89 Me. 395 (36 Atl. 629, 56 Am. St. R. 432) ; Boyd v. Agricultural Ins. Co., 20 Colo. App. 28 (76 Pac. 986). In Oneale v. Long, 4 Cranch, 60 (2 L. ed. 550), the Supreme Court of the United States held, that where a bond was executed by a principal with a certain surety, to obtain an appeal from a judgment of a justice of the peace in Maryland, and the bond was rejected by the justice, and afterward, without the knowledge of the surety, the name of another person was interlined as an obligor, and he executed the bond, which was then accepted, it was void as to the original surety. The opinion was very brief, merely stating that the judges did not all agree upon the same grounds, some being of the opinion that the bonds in question were void by reason of the interlineation; and others, that they were affected by the rejection of them by the magistrate, and could not be set up again without a new delivery, but that the trial court erred in not instructing the jury, on request, that, under the facts stated, the original surety would be discharged.

We will not discuss the cases which have arisen under the addition of a surety to a promissory note before or after its delivery, but confine ourselves to the case in hand.

*Judgment affirmed. All the Justices concur.*