Chief Justice Bibb
delivered the Opinion of the Court.
Upon a bill by the heirs anti distributees of William S. Webb, against the administrar tor, for account and distribution, the court decreed, in favor of the complainants, the, sum of two thousand one hundred and eighty-nine dollars, with interest from the decree until paid, and both parties have, appealed.
The amount with which the administrator is charged by the report of the commissioner, is four *164 thousand three hundred and sixty-six dollars, and two cents.
Disputed items in thó account a-gainsl the administrator.
bisputed credits claimed by the ad, ffiinistrator.
Against this the administrator is entitled lo a ere-* dit of one thousand four hundred and twenty-seven dollars, twenty-three cents, according to his account, as allowed by the county court for disbursements.
But in the charges against the administrator, two items are disputed by him, the one for a thousand dollars, advanced by the decedent to the use of his father (now the administrator,) being so much paid to Herndon in part of 140 acres of land purchased by the father of Herndon, at twenty dollars per acre, which was intended by the father to have been given to the son, by way of advancement, of which price of two thousand eight hundred dollars, the father by agreement with the son, advanced the sum of one thousand dollars, and the son the residue, and the son was to have had the whole tract. But the father has obtained the deed for one hundred acres, and the son a deed for forty-three acres and ten poles only. The second item disputed by the administrator, is the charge of five hundred and eighty dollars, for negro Humphrey, delivered by the son to the said Herndon, in part of the said tract of land, at the price of $508, allowed therefor by Herndon.
Besides these items, on the debet side of the account against the administrator, he claims credit for an account'exhibited in his answer, for rent of the land aceupied by the son in his lifetime, amounting to three hundred and forty dollars, also an account for hire of a slave, and for monej's paid for fee bills; &c. &c. which including the sum of $861 25, for 48 acres ten poles, of the aforesaid tract of land, for which the son received a deed, amount to seventeen hundred and thirty-nine dollars twenty-one. cents. The court disallowed this account, except as to the 48 acres 10 poles of land, and some other items not specified. To this disallowance of his credits, the administrator also objects.
The heirs object to the allowance of the credit of $861 25, for that part of the land deeded by *165 Herndon to the son, and also claim interest on the balance clue them.
Administra-tUl'a &icu-e-mentof his account.
Decree dismissing a bill p^^ance of a parol contract for the demand of the com-piainant for ™ad aclvanc-ed on the contract.
According to the statement contended for by the administrator, the account would stand thus:
Whole amount of charges reported againt the administrator: f\n *
Deduct ‡1,000 therein charged, for that sum paid by the decedent for the 140 acres to Herndon, and $508, also paid Herndon by the price of negro Humphrey, making together. 1508 00
Balance 2,758 02
Leaving a balance of charges against the administrator, Of two thousand seven hundred and fifty-eight dollars, two cents, to be accounted for. Against which he claims credits for the sum allowed on settlement with the county court: • 142? 23 1-2
Account of additional disbursements and charges for rents, &c. referred to in his answer: 1739 21 1-2
$3166 45 •
Making an aggregate of three thousand one, hundred and sixty-six dollars forty-five cents, which would leave a balance in favor of the administrator, against the heirs, of four hundred and ten dollars forty-three cents.
The objection to the charge of one thousand dollars against the administrator, for so much money paid by the decedent to Herndon, is founded on the decree in a former suit, by the infant heirs, by their next friend and guardian, against John Y. Webb, in his own person. They "claimed a conveyance of the one hundred acres of land, deeded by Herndon to said John Y. Webb, setting up the agreement between the father and the son, by which the father was to advance one thousand dollars in part of the priee of the land purchased of Herndon, and the sou to pay the balance, and to have the whole tract; *166 ibis thousand dollars by the father, being intended as an advancement to the son; and averingthat this agreement was the inducement to the son to advance his part of the price, amounting to eighteen hundred dollars. The bill was dismissed, and that dismission is pleaded in bar of the claim now set up by the heirs and distributees, for the money advanced by the son. This ba.r we think cannot be allowed. That bill was for a conveyance of the one hundred acres deeded to the father. That bill claimed the land by virtue of the agreement, and the advance promised the son, and his own payment of part of the price in pursuance of the agreement. That bill was against the father John V. Webb, in. his individual .character, not as administrator; it demanded hq settlement of the accounts, nor could the accounts of the administrator have been properly settled in that suit. The court could not properly have decreed, in that suit, th.e balance due from the administrator; he was not brought before the court to settle bis account as administrator. That bill was dismissed, it determined that the heirs were not entitled to have a conveyance of th.e land. Bat the father successfully resisted the claim, for the land, not for want of proof of the agreement, nor for want of payment by the son, but because the agreement was not in writing. It is clear that the father cannot be permitted to retain the land and also the money paid therefor by the son.
Vendor of land, by pa-rol, having refused to execute the contract, and afterwards became the administrator of the vendee, shall charge himself with the sums he had received on the contract, and account for it to the representatives of the intestate.
As to. so much of the price paid by the son ta Herndon for the land, as is not compensated by the value of the part deeded to the son, the father who has enjoyed the land so pa.id for, must stand indebted to the son. The money was paid to Herndon at the instance of the father, lie therefore stands indebted to the son, as for so much laid out and advanced to the use of the father. To that extent John V. Webb was indebted to the son, and ought, in settling his accounts as the administrator of his son, to have charged himself with so much as of the rights and credits of the decedent in the hands of himself as administrator.
The charge against him of five hunded and eight *167 dollars paid to Herndon in the sura allowed by him for the price of negro Humphrey, is resisted by the administrator, because he claims Humphrey as his own property, and.as loaned to the son. We think ourseJves bound by the proof to say the negro Humphrey was the property of tire son. , He was delivered by the son to Herndon, be had been for eighteen months or two years in the possession of the Son, the bill of sale to Herndon was given by the son in presence of the father and attested by him. The father had made the purchase of the land from Herndon, he had agreed to pay by way of advancement to the son, one thousand dollars of the price, the son was to- pay the residue and have the land. Th'e father paid one thousand dollars, the son did pay 1508, by money and the negro Humphrey. We do not think from the evidence, that there is any propriety in the claim of the father to this slave as having been loaned only. The father having failed to let the son have the land, the court very properly charged the price of Humphrey against the father in the settlement of the account.
Administrator held accountable for the price of a slavey the intestate had advance on such contract:
Claim of the father for the rents of lands he had induced the son to advance his capital to aid i-n purchasing, but which the father caused to bo conveyed to himself, and refused to convey to the son, disallowed.
Charge by the father against the son for the hire of a slave rejected,
Five per cent commission allowed the administrator, not on the receipts tint actual disbursements.
*167 The account for rents set up by the father against the heirs and distributees, was very properly disallowed. No contract for rent is pretended, and the law will not, from the circumstances, imply an as-sumpsit. Theré is ho colour for such á charge. He had induced his son to lay out his means in the purchase of land, the son enjoyed it, believing it his own; the father however, ■ Las the deed in his own name, refuses to convey, and by breach of promise, attempts to charge his son for use and occupation.
There is as little colour for the charge of the hire of another negro boy; if the negro was not the property of the son (a question not decided,) the use was a matter of courtesy, not of hire.
The charge for commission on the disbursement of $2428, is not correct, there is no evidence of such disbursement. But a commission of five per cent, on the disbursements actually made, to-wit: on the sum of $1707 45 this court will allow. As to the other items in the account of the administrator, *168 there is no proof to sustain them as charges against the heirs and distributees.
Held the 40 acres of land ivas conveyed the son, in consideration of his advances, and not as an advance^* inent'By die*, father, ^#60-' a cremt allowed the father íjí tES* valu-e: '■■Fudge Mill’s dissenting. ,
Interest charged to the administrator on the price of a slave he had unnecessarily sold, the distributees claiming no more.
Administrator charged with interest on money advanced him, the intestate, on a parol contract for land, which administrator refused to execute — to commence . from intestate’s death on the land.
*168 The counsel for the heirs object to the credit for the price of forty-three acres ten poles of the land, for which the son received the deed. They insist that the father should be charged with the whole sum paid by the son, without abatement for the land which he has obtained. The father having broken the faith and agreement upon which the money was advanced by the son, byjrefusing to let the son have the land, must be charged with the money laid out and expended by the son to the use of the father. But as to the value of the forty-three acres ten poles, for which the son has obtained the title, that much was advanced, laid out and expended by the son to his own use, not to the use and benefit of tbe father. But appears by the evidence that the forty-three igijrps aret less valuable than the residue. And the diffefs'iice is estimated at three dollars per acre; the one luuj$.red acres included all the improvements. 'jliB *g¿¿l¡John Y. Webb, ought to be credited with the 48 acáes ten poles, at seventeen dollars per acre making seven hundred and thirty-two dollars six cents.
The complainants not insisting on all the consequences of the sale of the negro man, under the circumstances detailed in the answer, but waiving the claim for hire, insist on interest on the money, as tbe sale was not necessary for the payment of debts. The court think that they are entitled to interest from the last of January 1819.
The claim to interest on the balance of the money advanced by William S. Webb, the intestate, after deducting the credit for the fortv-three acres ten poles, we think ought also to be allowed. The land purchased, and upon which the money was advanced was productive; the intestate advanced his money upon faith of it; the defendants has reaped the profits since the death of William S. Webb, the son, and ought to be charged with interest on the balance due to the son from his dfjafk, considering the circumstances of the case.
Directions for making up,' and state-account ^
The account should be thus made up:
The administrator is to be charged with the sum of four thousand three hundred sixty-six dollars, two cents, being the whole amount of the sales and receipts, and rights and credits of the decedent, including the price of the negro woman; the price of Humphrey, and the one thousand dollars paid to Herndon for the purchase of one hundred and forty acres of land; he is also to be charged with interest on six hundred dollars, part thereof (the price of the negro woman) from the last of January 1819, up to the time when the decree shall be entered hereafter in the circuit court; he is likewise to be charged with interest from the death of William S. Webb the intestate, up to the time when the decree shall be ren dered in the circuit court, upon the hundred seventy-five dollars ninety-four balance of advance for the land by Webb, after deducting the value of fori^pi eres ten poles, at seventeen dollars per the second of November 1818. The adi: is to be credited with the sum of fourtee twenty-seven dollars, twenty three cents f< ments; also with seven hundred thirty six cents, (the value of the forty-three poles, deeded by Herndon to William S. V with seventy-one dollars, thirty-six cents, for?commission on the disbursement of’ $1427 23. The account will stand thus;— sum of eight
Aggregate of charges against the adminminstrator, $4366 02
Credits allowed, $1427 23
Land, 732 06
Commission, 71 36 — 2230 65
'Balance due the heirs and distributees, $2135 37. Which leaves a balance to be paid the heirs and dis-tributees of two thousand one hundred thirty-five dollars, thirty seven cents, with interest on six hundred dollars, part thereof, to he computed after the rate of six per centum per annum, from the last clay of January one thousand eight hundred and nineteen, up to the time of the decree to be rendered in the circuit court; with like interest on the surp o? *170 eight huntired seventy-live dollars, ninety-four cents, to be computed from the second day of November one thousand eight hundred and eighteen, up to the time of the-decree -to be rendered in the circuit court. This decree is more beneficial to the complainants than the decree rendered by the circuit court, as to the amount decreed.
Decrees for money, a-gainstthe administrator, for distribu-tees, shall not bear interest.
Decree and mandate— execution of the decree against the administrator, to be suspended, till the guardian of the infant dis-tributees give bond of indemnity against futuro claims against the estate.
So that upon the errors assigned by the administrator, he had no cause of complaint, except in this, that the decree, gave current interest after it was pronounced, andomiitedto require bond with security, to be given to the administrator, that the com-.pkinants respectfully should refund their due proportions of any debts which may hereafter appear, with costs of recovery. But upon the errors assigned by the heirs and distributees, there is good cause for reversing the decree.
It is therefore ordered and decreed, that the decree ofthe circuit court be reversed; that the case be remanded to that court, with directions to enter a decree in favor of the complainants, for the sum of two thousand one hundred-thirty-six dollars, thirty-seven cents, with interest an the sum of eight hundred seventy-five dollars ninety-four cents, part thereof to be computed after the rate of six per cent, per year, from the second day of November one thousand eight hundred and eighteen, up to the time of rendering such decree, also with interest at like rate on the sum oí six hundred dollars, another part thereof to be computed from the last day of January, one thousand eight hundred and nineteen, up. to the lime Of-the decree, together with the costs of suit: but the execution of the decree to be suspended, and the cause retained until the guardians of the infants shall respectively enter in to bond for the infants to the administrator, with security to be approved by the court, in a penalty equal to the distributive share of the respective complainants, conditioned that the said heirs and distri-butees, respectively, shall refund to the administra-ior due proportions of any debts or demands which may afterwards appear against the intestate, and the costs attending the recovery of such debts.
costs,
Judge Mills’ dissent-
Chinn, for the administrator; Depew and Johnson, for the heirs.
And it is further ordered and decreed, tthat he
said administrator, John V. Webb, pay to the complainants, D. and H. Webb, their costs in this court expended, &c.
And it is further ordered and decreed, in the writ of error prosecuted by said John V. Webb, that the defendants pay to him his costs in that behalf expended in this court.
From this decree judge Mills dissents on one point — the balance of credit to the father, for the forty-three acres of land; he is of opinion that, as the land was deeded to the son, under the intended advancement, the son should be permitted to retain it, and transmit it to his heirs, without account for its price. As to the residue of the decree he concurs.