THE STATE ex rel. WELCH et al. v. J. R. MORRISON et al., Appellants.

**Division Two, June 20, 1912.**

1. **EXECUTORS AND ADMINISTRATORS: Indebtedness to Estate: Liability of Bondsmen.** Debts due from solvent executors to their testator are assets in their hands for which they are jointly liable upon their joint bond, and, their testamentary letters having been revoked, the administrator *de bonis non* may sue on that bond for any such assets in their hands for which they have failed to account.

2. ————: ————: ————: **Sureties.** The liability of a surety on an executor's bond for debts due from the executor to the testator, for which the executor has failed to account, is the same as that of the principal.

3. ————: ————: ⊢————: **Administrator de Bonis Non: Action on Predecessor's Bond: Settlement.** Under the Missouri statutes an administrator *de bonis non* can maintain an action on his predecessor's bond for assets in his hands for which he has failed to account, whether or not the displaced executor or administrator has made settlement showing a balance in his hands, and the action may be instituted in the circuit court or summary proceedings pursued in the probate court.

244 Mo. Sup.—13

4. ————: **Bond: Void Provision in Will.** A bond taken to secure the carrying out of the valid portions of a will is not void because some separable provision in the will is void.

5. ————: ————: ————: **Ignored.** The probate court, the executors in making their bond, and the circuit court in the trial of this action upon that bond, did right in ignoring a void provision in the will designed to overturn the administration statutes.

6. **WILL: Void Provision: No Conflict.** A void provision in a will cannot be said to conflict with anything.

7. **EXECUTORS AND ADMINISTRATORS: Bond: Execution: Liability of Sureties.** The sureties upon an executor's bond are not relieved of their liability because the bond was not signed in the presence of the probate judge (Sec. 29, R. S. 1909).

8. ————: **Action on Bond: Limitations.** Where a surety upon an executors' bond dies, and afterward the executors' letters are revoked, the limitation is seven years against an action upon the executors' bond brought by administratrices *de bonis non* against the administrator of the surety, and the statute began to run when the executors' letters were revoked, and not (the liability on the bond being contingent) at the time of the publication of notice of letters issued on the surety's estate.

9. ————: ————: **Defenses.** An averment in the answer of a surety upon a bond that another name was added as surety after he signed, and that that name was forged, should be stricken out, where there was no allegation that the name was signed after delivery, or that the surety so answering signed on an agreement or even on the anticipation that the second name was to be added, or that the approving officer was aware of the forgery.

10. ————: ————: **Indebtedness to Estate: Insolvency: Evidence.** In a suit upon an executors' bond it was not error to exclude evidence that two of the executors were insolvent two and one-half years and more after they took charge of the estate, there being no showing that conditions in later years were substantially like those at the time the executors took charge of the estate.

11. ————: ————: ————: **Account Recoverable.** In a suit upon an executors' bond for assets consisting of notes due from the executors to their testator for which they failed to account, a verdict is not excessive which is for a sum appreciably less than the amount due on the notes at the time the executors took charge of the estate, plus six per cent simple interest to the time of the revocation of the executors' letters.

12. ————: ————: ————: ————: **Error in Verdict: How Corrected.** An error in a verdict arising from an incorrect

State ex rel. v. Morrison.

computation of interest which renders the amount greater even than that prayed for, can be corrected by the Supreme Court or by the trial court under directions.

13. ———: ———: ———: ———: Defenses: Pendency of Prior Action: Pleading. An attempt, in the answer to an action upon an executors' bond, to set up the pendency of a prior action, should be stricken out by the trial court, where it was not averred when the action had been commenced or whether the plaintiffs in this case were plaintiffs or defendants in the other or that any of the parties to that action, except the plaintiffs, were parties to this, and it did appear that the prior action was not a suit on the bond sued on in this case.

14. INSTRUCTIONS: Assumption of Disputed Fact. An instruction purporting to cover a count and authorize a verdict on recited facts, is erroneous if it assume a vital and disputed fact.

15. ———: Within Law and Evidence. An instruction must be within the purview of both the pleadings and the evidence.

16. ———: Assuming Facts. An instruction in a suit upon an executors' bond is erroneous if it assume the genuineness of the signature of a defendant surety who has pleaded *non est factum* to the action, thus putting in issue the genuineness of his signature and giving rise to the real issue in the case.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton,* Judge.

Affirmed *in part*; reversed *in part*.

*M. S. Horn* and *Silvers & Silvers* for appellants.

The will of J. J. Ryan which withdrew the administration of his estate from the probate court of Bates county was against public policy. 9 Cyc. 510; Noise v. Marsh, 123 Mass. 286; Conner v. Draker, 1 Ohio St. 166; Trust Co. v. Green Cove Springs, 139 U. S. 137; Steamboat Co. v. Salvage Co., 123 U. S. 40; Doyle v. Ins. Co., 94 U. S. 535; Ins. Co. v. Morse, 20 Wall. 445; Trott v. Ins. Co., 1 Cliff. 439; King v. Howard, 27 Mo. 21; Tyler v. Larimore, 19 Mo. App. 454. When a will is against public policy the same cannot be enforced. 30 Am. and Eng. Ency. Law (2 Ed.), p. 612; Schouler on Wills, sec. 22. In business transac-

tions, any violation of the statutes of the State is unlawful, and therefore a will that provides that an estate shall be administered contrary to the laws of a State cannot be enforced. Brooks v. Cooper, 35 Am. St. Rep. 793; Brooks v. Cooper, 50 N. J. Eq. 761; Buckley, v. Humason, 36 Am. St. Rep. 637; Elliott v. Chamberlain, 48 Am. St. Rep. 327; Porter v. Jones, 52 Mo. 399; Bowers v. Bowers, 26 Pa. St. 74. An administrator *de bonis non* can sue his predecessor and sureties on the bond for assets not turned over to him, but not for failure to collect debts. R. S. 1889 and 1899, sec. 54; Waterman v. Dockray, 78 Me. 141; Hodge v. Hodge, 90 Me. 505; Meservey v. Kalloch, 53 Atl. 876; Court of Probate v. Smith, 17 Atl. 56; Brice v. Taylor, 9 S. W. 854; U. S. v. Walker, 109 U. S. 258; Beard v. Roth, 35 Fed. 397; Potts v. Smith, 24 Am. Dec. 359; State v. Rottiken, 34 Ark. 144; Rowan v. Kirkpatrick, 14 Ill. 1; Brownlee v. Lockwood, 20 N. J. 239; Johnson v. Hogan, 37 Tex. 77; Rives v. Patty, 43 Miss. 338; Beall v. New Mexico, 16 Wall. 535. The bond to be valid should have been signed in the presence of the probate court or the judge or clerk thereof or acknowledged before some one authorized to take acknowledgments of deeds. R. S. 1889, sec. 21; R. S. 1899, sec. 27; State v. Owen, 206 Mo. 573; State v. Woodard, 159 Mo. 680; State v. Crosswhite, 195 Mo. 1; Commonwealth v. Hickey, 172 Pa. St. 39; State v. Pratt, 148 Mo. 402; State v. Caldwell, 124 Mo. 509. Where an executor is insolvent when appointed, and remains insolvent during his administration, and up to the time of his discharge, his bondsmen are. not liable for his individual debts to the estate. McCarty v. Frazer, 62 Mo. 263; Houck v. Anderson, 61 L. R. A. 315; In re Walker, 125 Cal. 242; Bascus v. Stover, 89 N. Y. 1; Bascus v. Stover, 107 N. Y. 624; In re Georgi, 21 Misc. 419; Kader v. Yeargin, 85 Tenn. 486; State ex rel. McLamrock v. George, 119 Ind. 503; Condit v. Winslow, 106 Ind. 142. This suit was in part to

collect debts that the executors, F. J. Tygard and J. C. Clark owed the deceased. If the executors were solvent when they took charge of the estate and afterwards became insolvent, then the bondsmen would be liable for the part of the debts that could have been collected before the executors became insolvent. They would not be liable for interest accruing on debts after such insolvency. The court should have permitted the securities to show the insolvency after 1900, and between 1900 and the date of trial, February 19, 1908. The verdict of the jury was excessive and for this reason should have been set aside because the jury charged the bondsmen with interest on each and every count after the estate had been turned over to P. H. Holcomb and plaintiffs. There was no evidence showing that the money which Tygard and Clark owed Ryan at the time of his death could have been loaned by the executors at interest if the same had been collected. The instructions based on this theory and which authorized the jury to assess interest on these various sums should not have been given, as instructions should be based on facts in evidence. This proposition needs the citation of no authorities to support it. Instruction 2 should not have been given. Motor v. Reed, 6 Mo. 64; Kries v. Land Co., 121 Mo. App. 191; R. S. 1909, secs. 55, 56, 57 and 58. The heirs or distributees can and should bring any action for maladministration, even though the estate be not finally settled. State ex rel. v. Dickson, 213 Mo. 66. Isaac N. Mains, one of the bondsmen, having died and letters testamentary having been published more than two years before any action was commenced by the plaintiffs against E. A. Bennett as administrator; and it appearing clearly that if there was any breach of the bond it occurred during the lifetime of said Mains, the court erred in not giving a peremptory instruction in favor of E. A. Bennett, administrator. The judgment should be reversed because the petition states no cause of action

against the sureties. This is an action founded upon a bond. It is against the sureties on that bond. The liabilities of the sureties must be determined by the terms of the bond alone. The surety is bound only in the manner and under the circumstances named in the bond. County v. Salmon, 201 Mo. 136; Martin v. Whites, 128 Mo. App. 117. Acts prescribed by the will outside of the course of a statutory administration are not covered by a statutory executor's bond, and the sureties are not liable for anything outside such an administration unless the bond specifically so states. 18 Cyc. 1260; Armstrong v. Martin, 18 N. C. 397; Prescott v. Pitts, 9 Mass. 376; Carter v. Young, 9 Lea (Tenn.), 210; State ex rel. v. Anthony, 30 Mo. App. 638; Devore v. Pitman, 3 Mo. 182.

*Thomas J. Smith* for respondent.

(1) It may be conceded that paragraph 12 of the will of testator, Ryan, is void as being in contravention of the provisions of our statute on administration. This paragraph, however, is an independent paragraph, and the remaining portions of the will are in no way affected by its provision. The plaintiffs in the case claim no rights by virtue of the provisions of this paragraph. It may be rejected without affecting the other paragraphs of the will. Southworth v. Southworth, 173 Mo. 59; Sevier v. Woodson, 205 Mo. 202. (2) The plaintiffs as administratrices *de bonis non* with the will annexed may maintain this action. They are, indeed, the only persons who could maintain the action. Under the fifth and ninth paragraphs of the testator's will, all of the beneficiaries in said will being still alive, the trust created thereby continued and no one, save those legally charged with the execution of the will could maintain this action. R. S. 1889, sec. 54; R. S. 1909, sec. 62; State ex rel. v. Foster, 9 Mo. 356; State ex rel. v. Hunter, 15 Mo. 490;

State ex rel. v. Flynn, 48 Mo. 413; Booker v. Armstrong, 93 Mo. 49; State ex rel. v. Dulle, 45 Mo. 272; State ex rel. v. Heinrichs, 82 Mo. 547; Francisco v. Wingfield, 161 Mo. 555; Rozelle v. Harmon, 29 Mo. App. 581; Rozelle v. Harmon, 103 Mo. 342; Tetterington v. Hooker, 58 Mo. 597; Scott v. Royston, 223 Mo. 586; Potts v. Smith, 24 Am. Dec. 385. (3) The provisions of Sec. 21, R. S. 1889, being Sec. 29, R. S. 1909, as to the duties of the probate court, judge or clerk thereof in the matter of taking bonds required therein are directory only and made only for the benefit of the estates to be administered, and failure of the court, judge or clerk to strictly comply with the provisions of this statute will not render void a bond otherwise valid. Henry v. State, 9 Mo. 778; Court v. Sparks, 10 Mo. 83; James v. Dixon, 21 Mo. 538; State v. Farmer, 54 Mo. 444; Brown v. Weatherby, 71 Mo. 155; State ex rel. v. Railroad, 113 Mo. 308; Paving Co. v. McManus, 144 Mo. App. 608. Court records valid though not signed as required. Platt v. Marshall, 10 Mo. 347; Fontaine v. Hudson, 93 Mo. 69. Collectors bond though not approved valid. Moore v. State, 9 Mo. 334; State ex rel. v. Findley, 101 Mo. 373. Likewise as to constable's bond. Jones v. State, 7 Mo. 81. (4) If F. J. Tygard and J. C. Clark were solvent at the time they took charge of this estate in 1898, and the executors failed to collect their indebtedness to this estate, their subsequent insolvency would be no defense. The burden being on the defendants to show these debts could not have been collected after the executors took charge, that burden would not have been sustained by introducing evidence tending to show that two years thereafter they were insolvent. Williams v. Petticrew, 62 Mo. 471; Booker v. Armstrong, 93 Mo. 59. The mere insolvency of either or both of these parties would not have excused the executors from collecting these debts if they could have been collected by reasonable diligence. Young v. Thrasher,

48 Mo. App. 333; In re Mfg. Co., 164 Mo. 333.   (5)
The verdict was not excessive.   McCarty v. O'Bryan,
137 Mo. 590; McClintock v. Bank, 120 Mo. 127; Wil-
liams v. Railroad, 112 Mo. 463; Sweet v. Maupin, 65
Mo. 65; Lynch v. Railroad, 208 Mo. 42.   (6)   Instruc-
tion 2, complained of, was proper, since it is pre-
sumed until the contrary is shown that not only public
officials, but all others, do their duty as required by
law.   Lenox v. Harrison, 88 Mo. 496; Long v. M. & S.
Co., 68 Mo. 430; Mathias v. O'Neil, 94 Mo. 528; Agan
v. Shannon, 103 Mo. 665; Boynton v. Miller, 144 Mo.
687; McCallister v. Ross, 155 Mo. 94; Roe v. Bank, 167
Mo. 424.   (7)   The surety, I. N. Mains, having died
while the principals on the bond were still executors,
no cause of action accrued to the plaintiffs in this case
until after the removal of the executors.   Until they
were removed and then failed to properly account,
no cause of action arose in favor of any one.   This
occurred in February, 1907, and the action was
brought in September next following.

BLAIR, C.—Letters testamentary on the estate
of J. J. Ryan having been granted to Tygard, Clark
and Morrison and afterward revoked, this action on
their bond was begun on the relation of the admin-
istratrices d. b. n. c. t. a.   Fifteen of the sixteen counts
of the petition which survived demurrers to the evi-
dence and the verdict of the jury are founded on the
failure of the executors to pay over and account for
various sums represented by certain notes executed
by Tygard and Clark, or one of them, to J. J. Ryan
before his death.   The other of the sixteen counts had
its origin in an agreement of Tygard with Ryan to
buy in certain land under a trust deed and thereby
protect indebtedness due Ryan and a bank of which
Tygard was president, Clark cashier and Morrison
bookkeeper.   The purchase was made but the agree-
ment was violated.   There was evidence pro and con

as to the solvency of the executors at the time they took charge of the estate and thereafter and that question was submitted to the jury. Appellant Edwards and appellant Bennett's intestate, Mains, were sureties on the bond. Several defenses were interposed which will be considered in the course of the opinion.

I. The right of the administratrices *de bonis non* to sue on the bond to recover for the breaches alleged is challenged but must be sustained. The jury found the executors solvent when they took charge of the estate and thereafter and that finding is now conclusive. Being solvent then the indebtedness due from the executors to the estate constituted assets in their hands (Sec. 108, R. S. 1909; McCarty v. Frazer, 62 Mo. 263) for which they were jointly liable, having given a joint bond. Their solvency and the indebtedness of Tygard and Clark being, for present purposes, established by the verdict, and such indebtedness, in consequence, being assets in their hands, there is no good reason for distinguishing between such assets and any others which came into their possession. The liability of the surety is the same as that of the principal. [Bassett v. Deposit Co., 184 Mass. l. c. 213, *et seq.*] It is settled law in this State that an administrator *de bonis non* may sue on the bond of his predecessor for assets in his hands for which he has failed to account. [State to use v. Hunter, 15 Mo. 490; State to use v. Porter, 9 Mo. 352; State to use v. Price and Lusk, 17 Mo. 431; State ex rel. v. Dulle, 45 Mo. 269; Scott v. Crews, 72 Mo. 261; State to use v. Fulton, 35 Mo. 323; State ,to use v. Flynn, 48 Mo. l. c. 416, 417.] These cases (See Seymour v. Seymour, 67 Mo. l. c. 305, 306) also settle the rule that, under our statutes, such action can be maintained whether or not the displaced executor or administrator has made settlement showing a balance in his hands and, also, that the action may be instituted in the circuit court or sum-

mary proceedings pursued in the probate court. The cases cited to the contrary announce common law rules but the common law system has been superseded by our statutes. [Titterington v. Hooker. 58 Mo. l. c. 597, 598.]

2. The attempt of the testator, by provision in his will, to "overturn the statutes of the State upon the subject of administration of estates" proved fruitless as like provisions in wills have heretofore done (Sevier v. Woodson, 205 Mo. l. c. 217) but it by no means follows that the bond, taken despite that void provision, is invalid. Many cases are cited which point out the invalidity of contracts, clauses in wills, etc., which come into collision with public policy, but these do not authorize the conclusion that a bond taken to secure the carrying out of the valid portions of a will is void because some separable provision in the instrument is void.

The provision mentioned was ignored by the probate court, by the executors in executing the bond and by the circuit court on the trial. All were right. [Southworth v. Southworth, 173 Mo. l. c. 71, 72.] Nor is there any conflict between the will and the bond. The provision mentioned being void cannot be said to conflict with anything.

3. That part of the answer which averred, as a complete defense, that the bond was not signed in the presence of the probate judge, etc. (Sec. 29, R. S. 1909), was stricken out and that ruling is assigned for error.

It is contended that the requirement of the section upon which this paragraph of the answer was based is mandatory and that a failure to comply with it exonerates the sureties.

This court has held that failure to approve a bond does not relieve the sureties thereon from liability (Jones v. State, 7 Mo. l. c. 85) and has applied this rule to bonds of executors and administrators. [Hen-

ry v. State, 9 Mo. 769; James v. Dixon, 21 Mo. l. c. 539, 540; State to use v. Farmer, 54 Mo. l. c. 444, 445.] It was also held that the statute prohibiting the acceptance of an attorney-at-law as surety on an administrator's bond, though mandatory in form, is directory in fact and that an attorney having signed such a bond as surety could not rely upon the statute to relieve him of his undertaking; the court saying the provision "was not designed to avoid the obligation where the law has been disregarded." [Hicks v. Chouteau, 12 Mo. l. c. 343.]

Edwards' plea of *non est factum* is to be disregarded in considering the question presented by the ruling mentioned, the insistence on this phase of the case being that despite his signing the bond, assuming he did so, if it appears he did not sign in the presence of one of the persons designated by section 29 he is not liable.

The language of the section is mandatory in form: "and said bond shall be signed in the presence of the court, judge, clerk or acknowledged before some officer," etc.

The purpose of requiring bond at all is to protect creditors and distributees and all the provisions of the statute as to the formalities to be observed are designed to add to their security. Undoubtedly they would have the right to insist upon compliance with these provisions, but is the surety who has signed an executor's bond (which has been presented to the probate court, approved, filed and recorded by it) after the executor has mismanaged the estate exonerated by reason of the probate judge having omitted one of his duties with respect to the *manner* of taking the bond? The statute does not declare that a failure of the surety to sign in the presence of one of the persons designated shall render the bond invalid or relieve the surety of liability. Such failure neither enlarges nor diminishes the liability expressed on the face of

the bond. No advantage would seem to accrue to the *surety* from compliance with the· statute which he would not otherwise enjoy. The bond is the essential thing. This appears from both the language and the purpose of the statute. One of the real designs is to protect those who, by reason of immaturity and inexperience, are in many instances incapable of protecting themselves. To attach to the error, the *misprision* (State ex rel. v. Co. Ct., 41 Mo. l. c. 251, 252), of the probate judge such serious consequences as urged would tend rather to defeat than effectuate the legislative purpose. From the cases cited it appears that failure to approve, though approval be required, does not invalidate a bond unless the statute provides that such shall be the result. This principle goes far toward warranting a like conclusion with respect to the requirement under consideration. The thing directed to be done is not ''the essence of the thing required'' for the essence of the thing required is the bond and the protection it affords.

An administrator or executor is a quasi-public officer (Mechem's Public Officers, sec. 840) and with respect to public officers the same author points out (Sec. 269) that the fact the ''bond is not taken by the proper persons or in the prescribed manner, or that it was not approved, or was not approved by the designated officer; or that it *was not signed or acknowledged in the presence of a particular officer,* or that it was given before the time specified, or not until the time fixed had expired, or was not stamped as required, or that the officer who gave it had not been sworn, is immaterial, and the bond, if otherwise perfect, will be enforced.''

So far as concerns the approval of an administrator's or executor's bond this court has applied the identical rule applicable in the case of an officer (James v. Dixon, supra) as the case there cited discloses. There is no single, settled rule, applicable in all cases.

by which the character of a statute with respect to its being mandatory or directory is to be determined. "In reason, we may say, that the interpretation will be adopted which will best subserve justice and the true legislative intent." [Bishop on Written Laws, Sec. 255.] Undoubtedly the Legislature did not intend any of the provisions of section 29, Revised Statutes 1909, to be disobeyed, but it did not prescribe the consequences, so far as the sureties and beneficiaries are concerned, which should follow disobedience. In such circumstances the courts must, of necessity, determine what such consequences are. The probate judge may be liable for his neglect of duty (Sec. 4064, R. S. 1909) though that duty be imposed by a statute directory in nature when examined from another viewpoint and the fact that such liability may ensue does not necessitate a conclusion that the statute is mandatory in the sense contended for by appellant in this case. [Bishop on Written Laws, sec. 256.]

"When a party gives a bond that he may have some privilege or right, as an office, appeal, *supersedeas,* or the like, and he has the benefit as upon having given the bond required by law, he cannot afterwards avoid responsibility upon it because he has departed in some particular from the statutory form, or omitted some formality in execution, approval or filing. An appeal bond filed without a required justification of sureties is nevertheless good, and will support the appeal, if the sureties are in fact sufficient. The provision of the statute requiring a justification is so far directory where no different intention is manifest." [Lewis's Sutherland on Stat. Const., sec. 626; State v. Winfree, 12 La. Ann. 1. c. 645; Bloomfield, Governor, v. Ash, 4 N. J. L. 315.]

On the whole the statute seems designed rather, by the required observance, to add to the security of creditors and distributees than to destroy that security in case of its non-observance (Mowbray v. State

ex rel., 88 Ind. l. c. 326) and the Legislature having failed to declare or indicate the effect, on the bond, of non-observance, we must declare it, and we think the provision should be to that extent held directory. The action of the trial court in striking out that part of the answer which proceeded on a different theory was not erroneous.

Decisions of this court in suits on recognizances in criminal cases are cited (State v. Pratt, 148 Mo. 402; State v. Woodward, 159 Mo. 680; State v. Crosswhite, 195 Mo. 1) in support of the contention that a failure of the executors and sureties to sign in open court or in the presence of the probate judge or other person designated in section 29, Revised Statutes 1909, renders executors' bonds wholly void. The sections of the statutes upon which those cases were decided differ markedly, with respect to the requirement now being considered, from the section involved in this case. Besides, the term *recognizance* itself implies the personal appearance of the principal and his sureties before the officer taking bail. A recognizance *need not be signed* at all unless the statute requires it and the fact that the statute may require signatures in given cases does not amend the nature of the thing itself and avoid the necessity of appearance before the officer. The theory of such a transaction is that the giving of a recognizance in a criminal case transfers the accused from the custody of the law to the more friendly custody of his sureties—thus in a sense keeping him in uninterrupted restraint. Conferring power on a sheriff to take a *recognizance* in specified circumstances, leaves him under the necessity of taking a *recognizance* and taking it in the customary way except in so far as the statute affirmatively or by necessary implication changes the method. The fact that the officer is authorized to take a recognizance in the form of a writing obligatory signed by the principal and his sureties does not warrant his omitting another

essential element of a recognizance, to-wit, the appearance of the sureties before the officer, his authority being wholly statutory. The very definition of the words originally implied appearance—an oral acknowledgment of an obligation. [State v. McGuire, 42 Minn. 1. c. 28, 29; Colvig v. County, 16 Or. 1. c. 248, 249; 1 Chitty, Cr., Law, p. 92, 93; 3 Blackstone's Com., chap. 22; 2 *Id.*, p. 341, 342.] For these reasons the cases cited are not in point on the question before us.

4. The trial court was right in striking out that part of the answer of Bennett, administrator of Mains, setting up the two year limitation (Sec. 191, R. S. 1909) upon the presentation of demands against estates. This suit was upon the bond of the prior executors, brought by administratrices *de bonis non,* and the limitation fixed by special statute (Sec. 63, R. S. 1909) is seven years. The right of action, as appears from that section, accrued upon the revocation of the executors' letters, which occurred but a short time prior to the institution of this suit and subsequent to the death of Mains. In the circumstances, the liability under the bond being contingent, the statute did not begin to run at the time of the publication of notice of letters issued on the Mains' estate. [Binz v. Hyatt, 200 Mo. 1. c. 308, 309, and cases ciited.] The cause of action under the pleaded and conceded facts was not barred. [McWilliams 'v. Norfleet, 60 Miss. 1. c. 987, 996.]

5. The action of the trial court in striking from the answer of Bennett, administrator of Mains, the averment that after Mains signed Edwards's name, as surety, was added to the bond without Mains's knowledge, and another separate averment that Edwards's name was forged, was not erroneous. The two were inconsistent, in the first place (Nelson v. Brodhack, 44 Mo. 1. c. 598, 599) and had each constituted a defense an election could have been required. Neither paragraph, however, pleaded facts sufficient to consti-

tute a defense. There was no allegation that Edwards signed after delivery and consequently the averment did not negative the presumption that the principals had implied authority to secure other sureties before delivery. [Brey v. Hagan, 110 Ky. 566; Ward v. Hackett, 30 Minn. 152; Graham v. Rush, 73 Iowa, 451; Anderson v. Bellenger, 87 Ala. 334; Berryman v. Manker, 56 Iowa, 150; Hall's Admx. v. McHenry, 19 Iowa, 521; State v. Paxton, 65 Neb. 130, 131; Lewiston v. Gagne, 89 Me. 395, 399.]

With respect to the alleged forgery of Edwards's name as surety, after Mains signed the bond, there is no averment that Mains signed on an agreement or even on the anticipation that Edwards was to sign, nor that the approving officer was aware of the forgery. [State ex rel. v. Hewitt, 72 Mo. 603 and cases cited.]

6. There was no error in excluding evidence tending to show Tygard's and Clark's insolvency two and one-half years and more after they and Morrison took charge of the estate. The general rule is that presumptions "do not run backward" and there is nothing exceptional in this respect, in this case. Proof of insolvency in 1901 would not, of itself, raise any presumption of insolvency in 1898 under the facts of this case, if it could in any. It is true that it has been said evidence of the existence of a given condition at a subsequent time might be admissible, though insufficient to afford a basis for a presumption. In admitting such evidence, however, trial courts are necessarily vested with a wide discretion which the court did not exercise in this case to defendants' prejudice, having permitted the evidence to range through nearly two and one-half years (State v. Ellis, 138 Wis. l. c. 524, 525; Railroad v. Vaughan, 111 Va. l. c. 791; Corbin v. U. S., 181 Fed. l. c. 304; Windhaus v. Bootz, 92 Cal. l. c. 621; 1 Elliott on Evidence, sec. 110), and there being no showing that conditions in later years

were substantially like those at the time the executors took charge of the estate. [Campbell v. Park, 128 Ia. l. c. 187; State v. Cadwell, 79 Ia. l. c. 438.]

7. So far as concerns the contention that the verdicts on counts fourteen to twenty-seven, inclusive, are excessive it is only necessary to say that on each of these counts the verdict is for a sum appreciably less than the amount due on the note, which forms the basis of the count, at the time the executors took charge of the estate, plus six per cent simple interest thereon to the time of the revocation of letters. These counts are all founded on notes due from one or more of the executors to Ryan in his lifetime and their amounts became assets in the executors' hands when they took charge of the estate, the jury having found the executors then solvent. Their subsequent insolvency during the time the estate was in their hands is of no consequence, since by reason of their indebtedness and their solvency at the time they took charge of the estate the law operated to make the indebtedness assets in their hands (Wachsmuth v. Ins. Co., 241 Ill. l. c. 414), and will treat it as paid "as between the administrator and those beneficially interested in the estate," though not so treating it under some circumstances; for instance, when the lien of a mortgage would thereby be affected. [Stewart v. Hurd, 78 Atl. l. c. 841.] The executors being solvent, according to the verdict, and never having charged themselves with the amount of the notes or accounted for their proceeds in any way, they and their sureties on the bond are liable for at least the amount of interest included in the verdicts on the counts mentioned. Whether they be held to have converted the money, or be treated as borrowers (in view of the direction in the will to invest) or the notes be treated as unextinguished, as a basis for the computation of interest, until actual payment, the amounts allowed are not excessive. [In

244 Mo. Sup.— 14

re estate of Camp, 6 Mo. App. 563; Williams, Adm'r v. Petticrew, 62 Mo. l. c. 472; In re Davis, 62 Mo. 450; Julian v. Wrightsman, 73 Mo. l. c. 572; Garesche, Adm'r v. Priest, 9 Mo. App. l. c. 274; *Id.*, 78 Mo. 126; Henry v. State, 9 Mo. 769.] In fact the statute (Sec. 231, R. S. 1909) requires the payment by the executor of interest on any funds of the estate he uses for his own purposes and this statute is mandatory. [Wolfort v. Reilly, 133 Mo. 467.]

It is not intended, by what has been said, to decide that the allowance of interest must be limited to the time of revocation of letters or can always be allowed continuously to such time, but merely that the allowance in this case apparently having been so limited was not excessive. Nor was the rate excessive under any rule. The authorities authorize the allowance of interest in cases analogous to this. [Rodenbach's Appeal, 102 Pa. St. 572; Koon v. Munro, 11 S. C. l. c. 157; Webb's Heirs v. Webb's Admr., 22 Ky. 168; Clark's Appeal, 2 Watts (Pa.), 405; Terhune v. Oldis, 44 N. J. Eq. l. c. 152, 153; In re Davis, 75 N. Y. Supp. 493; Heirs of Sharp v. Kleinpeter, 7 La. Ann. l. c. 267; In re Boyer, 105 N. Y. Supp. 857; In re Clark, 11 N. Y. Supp. 911, 912; Phillips v. Duckett, 112 Ill. App. l. c. 591; Good's Appeal, 150 Pa. St. l. c. 306, 307; Com. ex rel. v. Bracken et al., 32 S. W. 609; 2 Woerner's Am. Law of Administration, sec. 512; Dyer v. Jacoway, 50 Ark. 217; St. Paul Trust Co. v. Kittson, 62 Minn. l. c. 414, *et seq.;* Ackerman's Case, 40 N. J. Eq. 533.]

8. The verdict on count eight is clearly excessive, being for a sum even in excess of the amount prayed. The error is one in the computation of interest and can, consequently, be corrected by this court or by the trial court under directions.

9. That portion of the answer to count thirty-four in which it was attempted to set up the pendency of a prior action was insufficient and the trial

court was right in striking it out. It was not averred when the action had been commenced or whether the administratrices were plaintiffs or defendants and it did appear that it was not a suit on the bond sued on in this case. Further it was not averred that any of the parties to that action, except the administratrices, were parties to this. [Rodney v. Gibbs, 184 Mo. l. c. 10, 11.]

The thirty-fourth count proceeded on the theory that Tygard had been guilty of a breach of an agreement in disposing of the proceeds of certain lands which it is alleged he bought in to protect Ryan and the Bates County Bank, both being holders of deeds of trust on the property. An agreement between the bank and Ryan that Tygard should buy in the land at trustee's sale is pleaded and it is alleged Tygard did so but failed to pay off Ryan's claims out of the proceeds. The count is vague and not so broad as the evidence offered under it. The court permitted a recovery on the theory of a constructive trust. The instruction given assumed the existence of Tygard's agreement to bid in the property and proceeded, after predicating other facts, to authorize a verdict. This was error since an instruction purporting to cover the case and authorize a verdict on recited facts must not ignore or assume a vital and disputed fact. The instruction assumed the existence of the principal fact pleaded in count thirty-four and authorized the jury to return a verdict without finding that fact. On the evidence in this record this assumption was wrong. [Chappell v. Allen, 38 Mo. l c. 221, 222; Crews v. Lackland, 67 Mo. l. c. 621, 622.] Besides the theory of the instruction was, as already indicated, wholly different from that of the count itself. Neither the land nor its proceeds is sought to be recovered but the action is on the bond and based on Tygard's liability to Ryan or his estate. An instruction "must be within the purview of both the pleadings and the evidence."

[Degonia v. Railroad, 224 Mo. l. c. 589, 590, and cases cited.]

10. Defendants complain of instruction two. It reads as follows:

"The court instructs the jury that before F. J. Tygard, J. C. Clark and J. R. Morrison, named in the will of J. J. Ryan as executors thereof, could enter upon the discharge of their duties as such executors, they were required by the statutes of this State to execute and deliver to the probate court, or the judge thereof, a bond with not less than two solvent securities for the faithful discharge of their duties as such executors, which bond the law requires should be executed by both principals and sureties in the probate court while in session or before the judge or clerk thereof, or before some other officer authorized to take acknowledgments of deeds, in which event the fact of such execution in the presence of such officers was required to be certified to the probate court. Now under the law the presumption is that not only said executors and sureties upon said bond discharged their duties as above stated, but that the probate court or the judge thereof, William M. Dalton, also discharged his duty in requiring said bond to be executed or subscribed by all of said executors and the sureties thereon, Isaac N. Mains and J. P. Edwards, either in open court or before the judge of said court personally."

Both the maxim that public officers are presumed to do their duty, and the other, that private persons are presumed to act according to their duties, and obligations, are woven into the instruction set forth. In no event could there be a presumption arising out of the mere presence of Edwards's name on the bond unless the signature was genuine. Whatever the effect of the approval of the bond by the probate judge, defendant Edwards had no duty to perform in connection with the matter unless he signed the bond, and the

State ex rel. v. Morrison.

so-called presumption as to his acting in accordance with his duty must necessarily grow out of a genuine signature or not arise at all. His plea of *non est factum* put the genuineness of that signature in issue and this was the real issue in the case. In bringing into the case a presumption as to the sureties, Edwards and Mains, having "performed their duties" and as to their having, therefore, *signed* the bond in the presence of the probate judge, the trial court begged the question so far as Edwards was concerned. Having told the jury the law required sureties on executors' bonds to sign in the presence of the judge, the court then told them the law *presumed* "said . . . sureties upon *said* bond discharged their duties as above stated," etc. The effect of all this was to convey to the jury the idea that it was the duty of Edwards and Mains to sign the bond, in the first place, and to sign it in the judge's presence. The instruction assumed the signing and on this assumption based a presumption of the same thing. Undoubtedly, unless Edwards signed the bond he had no duty in the premises and, consequently, none out of which any presumption could arise. To thus throw into the scale, on the issue, on the plea of *non est factum* a practical assumption of the fact in issue, i. e., the genuineness of Edwards's signature, was error of a serious sort. It was little less than a peremptory instruction to find for plaintiff on this issue.

In so far as the instruction states the familiar maxim concerning the performance of official duties by those upon whom they are enjoined, it is far from clear that it can, in the circumstances of this case, be upheld. It is a maxim, a rule of legal reasoning, and it is certain that the bald and unqualified statement that the *law presumes* the probate judge did his duty and required the sureties to *sign* the bond in his presence goes too far. In this case the record of the approval was required to be made and out of the act of

approval (of which the record was evidence) it may be said a presumption arises that the probate judge performed his precedent duties, one of which was to require the principals and sureties to sign the bond in his presence. There was certainly no conclusive presumption of law to that effect, however, and the instruction should not have been so phrased as to convey that idea to the jury. It was competent for defendant Edwards to have disproved (which he attempted) the fact that he signed the bond at all, even though such proof ran contrary to the presumption, and the instruction should, at all events have made this clear to the jury. Whether the principle mentioned be called a presumption, a maxim or a rule of legal reasoning, it is not in every case proper to give it to a jury in the form of a presumption. In this case, however, we see no harm in view of the facts in advising the jury of the rule provided it be properly qualified and guarded as above indicated. It ought to be made plain that all the evidence is to be considered on the issue. [Peyton v. Village, 177 N. Y. l. c. 106, 107.]

The cases cited by respondents' counsel do not deal with instructions to juries on this subject and certainly none of them authorize the instruction in the form in which it was given. [4 Wigmore on Evidence, sec. 2534; 1 Phillips on Evidence, pp. 642, 643; 2 Wharton on Evidence, sec. 1319; Albany Co. Savings Bank v. McCarty, 149 N. Y. l. c. 83; Rogers v. Pell, 154 N. Y. l. c. 530; 1 Elliott on Evidence, sec. 104.]

11. Other questions are mentioned in the very helpful briefs filed but we do not deem it necessary to discuss them in detail. Suffice it to say that out of the complicated disclosures of this record it results that as to defendant Edwards the judgment must be reversed on each of the counts on which recovery was had against him and the cause remanded. As to defendant Bennett, Adm'r of Mains, the judgment on

each of counts fourteen to twenty-seven, inclusive, is affirmed.   The judgment on count eight, as to Bennett, is affirmed on condition that a remittitur of four hundred and sixty-two dollars be entered, within ten days, as of the date of the judgment in the case, otherwise the judgment on said count will stand reversed and cause thereon remanded.   The judgment as to Bennett on count thirty-four is reversed and the cause remanded.  *Roy, C.,* concurs.

PER   CURIAM.—The   foregoing   opinion   of BLAIR, C., is adopted as the opinion of the court.  All the judges concur.