**In re ESTATE of Caroline Ada SAMPLE, Deceased, Plaintiff, Respondent,**

v.

**TRAVELERS INDEMNITY COMPANY and Truman R. Sample, Defendants, Appellants.**

**No. 55841.**

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

Motion for Rehearing or Transfer to Court En Banc Denied April 9, 1973.

John W. Reid, II, Schnapp, Graham & Reid, Fredricktown, for plaintiff-respondent.

Colson & Wagner, David L. Colson, Farmington, for defendants-appellants.

KENNETH R. LEWIS, Special Judge.

This is an appeal from the entry of a summary judgment in favor of the plaintiff in the sum of $95,939.62.

The case involves a proceeding on the bond of a guardian brought under the provisions of § 473.207, RSMo 1959, V.A.M.S. The suit was commenced on July 29, 1969, by the filing of a petition for damages in the Probate Court of St. Francois County by E. A. Sample, Administrator of the Estate of Ada C. Sample, Deceased, against Truman R. Sample, Guardian of the Estate of Caroline Ada Sample (also known as Ada C. Sample and Mrs. E. A. Sample), Incompetent, and the guardian's surety, Travelers Indemnity Company. The peti-

tion alleges that Truman R. Sample was appointed guardian of Caroline Ada Sample on November 12, 1965, in the Probate Court of St. Francois County; that Caroline Ada Sample died on April 1, 1966; that the guardian was indebted to his ward on seven promissory notes described in the petition on the date of his appointment; that the guardian has breached his obligation under his bond by failing to turn over the assets of the guardianship to the administrator of the decedent's estate and in particular an amount equal to the principal and interest on the seven promissory notes; and that the guardian has failed to file a timely final settlement. The petition further alleges that the Travelers Indemnity Company was the surety on the guardian's bond and that it is liable to the administrator for the damages caused by the guardian's breach of his obligation under his bond. The petition prays judgment against the guardian and his surety in the amount of $90,693.59 plus accrued interest on the aforementioned promissory notes.

The administrator has founded his claim against the guardian and, in turn, the surety on the allegation that the guardian was indebted to the ward on the date of his appointment on the notes in question and failed to discharge the debt. It is evident from the record that the real controversy exists between the administrator and the surety as the guardian has not resisted the entry of judgment against him. Since this appeal arose out of the entry of a summary judgment, we must necessarily base our discussion of these notes upon the allegations of the petition and the supporting affidavits, exhibits and request for admissions.

The petition alleges that the first note in question was executed on January 23, 1955, in favor of the New Era Bank in the amount of $8,000 and that said note was "signed by T. R. Sample, Mrs. T. R. Sample and Mrs. E. A. Sample". The second note was allegedly "signed by T. R. Sample and Mrs. E. A. Sample" and was payable to the New Era Bank, dated January 30,

1964, in the amount of $7,000. These two notes were secured by certificates of deposit owned by Mrs. E. A. Sample. The certificate of deposit pledged to secure the $8,000 note was taken by the bank to pay that note on March 2, 1963. Likewise, the bank took the certificate of deposit securing the $7,000 note on December 7, 1964.

The petition further alleges that three of the notes were made to the United Bank of Farmington. The first was dated September 24, 1964, in the amount of $10,000 and was "signed by T. R. Sample and Mrs. E. A. Sample". The second note payable to the United Bank of Farmington was dated November 16, 1964, in the amount of $3,000 and was "signed by Mrs. E. A. Sample". The third note was dated June 24, 1965, in the amount of $26,995.22 and was "signed by T. R. Sample, Nell F. Sample and Mrs. E. A. Sample". The petition alleges that these three notes were paid on January 26, 1966, by the guardianship estate of Caroline Ada Sample pursuant to an order of the probate court.

The remaining two notes involved in this action were payable to the First State Bank of Farmington and were dated August 21, 1963, and May 17, 1965, and were in the amounts of $29,000 and $3,000 respectively. The petition alleges that these two notes were "signed by Truman R. Sample and Nell F. Sample, makers, and Mrs. E. A. Sample, co-maker". These two notes were secured by certain certificates of deposit in the name of Mrs. E. A. Sample. The certificates of deposit securing the $29,000 note were allegedly taken by the First State Bank of Farmington and applied to the payment of this note on August 12, 1966. Then on June 30, 1967, the Administrator of the Estate of Ada C. Sample, Deceased, paid the balance owing on this note. The petition further alleges that the $3,000 note was paid on June 2, 1967, pursuant to an order of the probate court by the administrator.

After the filing of the petition in the Probate Court of St. Francois County, the

Judge of that Court voluntarily disqualified himself and on October 1, 1969, ordered the cause transferred to the circuit court of that county in accordance with § 472.060, RSMo 1959, V.A.M.S. On January 10, 1970, the plaintiff filed a motion for summary judgment in the circuit court under the provisions of Rule 74.04(a), V.A.M.R. Attached to the motion for summary judgment was, as stated in the motion, ". . . a copy of a judgment against Truman R. Sample and Nell Sample, entered by the Superior Court of Thomas County, Georgia; a copy of an affidavit of Truman R. Sample; and a copy of Confession of Judgment signed by Truman R. Sample."

The judgment referred to in plaintiff's motion for summary judgment was a confession judgment entered by the Superior Court of Thomas County, Georgia, on November 22, 1969, in favor of E. A. Sample, Administrator of the Estate of Ada C. Sample, and against Truman R. Sample and Nell Fardell Sample in the sum of $88,873.55, together with interest in the amount of $24,580.52. No reference whatever was made to the cause of action giving rise to this judgment.

Eliminating the formal portions of the affidavit of Truman R. Sample which was attached to the motion for summary judgment, it stated as follows: "Before me, the undersigned officer, personally appeared Truman R. Sample who, being first duly sworn, deposes and says that on November 12, 1965 he was solvent and his net worth exceeded $125,000.00."

The confession of judgment of Truman R. Sample was filed and captioned in the Circuit Court of St. Francois County, Missouri. It contained an entry of appearance and then went on to state: "I further confess that judgment may be entered against me in any court of competent jurisdiction in said county on the judgment entered against me in Thomas County Superior Court, said judgment being in the amount of $88,873.55 plus interest and costs and said judgment being dated the —— day of November, 1969."

On April 14, 1970, the defendant Travelers Indemnity Company filed answer in the circuit court in the form of an unverified general denial and did not serve opposing affidavits.

A request for admissions was filed by the plaintiff directed to the defendant Travelers Indemnity Company on April 16, 1970, to which neither a denial nor objections was filed. The request asked that defendant Travelers Indemnity Company admit "That Exhibit A is a true and complete copy and genuine copy of the application of Truman R. Sample to be bonded as the Guardian of his mother's estate by the Travelers Indemnity Company . . . ." The perinent statements of Truman R. Sample contained in the application were that his financial worth was $200,000 and that he was indebted to the estate for "around $50,000.00—Signature Note (in Safety Dept. Box)". The date of the application was December 15, 1965.

On April 16, 1970, plaintiff filed three additional affidavits in support of his motion for summary judgment. The first affidavit was that of Miss Anna L. Beck which, in brief, stated that she had known Caroline Ada Sample for over thirty years; that Truman R. Sample owed money to his mother; that the affiant did not know the exact amount; that the affiant saw Truman R. Sample make no payments to his mother; that Caroline Ada Sample was concerned over the money owed to her by her son, Truman R. Sample; that Caroline Ada Sample had contacted her son many times about the matter. No mention was made in this affidavit as to the amount of the indebtedness, how it was incurred, or when it came into being.

The second affidavit was that of Robert E. Green, President of the New Era Bank, Fredericktown, Missouri, stating that Truman R. Sample had "received the proceeds" of the two notes executed to the New Era Bank. The third affidavit was

signed by Vernon H. Giessing, President of the United Bank of Farmington, and stated that Truman R. Sample "received the proceeds" of the three notes made payable to that bank.

On April 28, 1970, the affidavit of H. F. Jennings, President of the First State Bank of Farmington was filed by plaintiff. This affidavit stated that the proceeds of the two notes payable to the First State Bank "were used" by Truman R. Sample. Attached to this affidavit, and to the affidavits of the other bank officers, were the records of the respective banks pertaining to the notes in question.

On April 29, 1970, summary judgment was entered against defendants Truman R. Sample, Guardian of Caroline Ada Sample Estate, and his bonding company, Travelers Indemnity Company, in the sum of $95,935.62, from which summary judgment Travelers Indemnity Company has prosecuted this appeal.

We note at this point that the respondent has included in his brief a great many facts which are not contained in the transcript. Additional exhibits have been filed for the first time in this Court. We ignore all of these matters and determine this appeal solely upon the record in the trial court. Rule 84.04(c), V.A.M.R.

We will consider together the two points raised by appellant which are dispositive of this appeal. Appellant asserts that the trial court erred in granting summary judgment because there were genuine issues as to material facts and, further, that plaintiff was not entitled to judgment as a matter of law. We agree with these contentions and therefore reverse and remand this cause for further proceedings.

Summary judgment is authorized by Rule 74.04, V.A.M.R., which provides in subsec. (c) that: "Judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that any party is entitled to a judgment as a matter of law." It is further stated in subsec. (h) of Rule 74.04 that: "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

■ By filing a general denial, the appellant put at issue all of the allegations of the petition. Matthews v. City of St. Ann., Mo., 457 S.W.2d 766. Therefore, in order for the instant summary judgment to stand, the admissions, affidavits and exhibits on file must show that there is no genuine issue as to any material fact and that the plaintiff is entitled to such judgment as a matter of law. In considering this question, the facts stated in the affidavits and exhibits filed by plaintiff are taken as admitted since the defendant failed to file opposing affidavits or other verified denials. Dietrich v. Pulitzer Publishing Co., Mo., 422 S.W.2d 330. With respect to the request for admissions, Rule 59.01, V.A.M. R., provides that: "Each of the matters of which an admission is requested shall be deemed admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying . . . the matters . . . or (2) written objections . . . ." Having failed to deny or object to the request for admissions, the defendant has thereby admitted that the exhibit attached to the request was a "true and complete and genuine copy" of the bond application of Truman R. Sample. For the purpose of this appeal we shall assume, but we do not so hold, that the *facts stated in the application* were also admitted by the defendant's failure to respond to the request for admissions.

■ The trial court in its order for summary judgment stated that the Georgia judgment attached to the motion for summary judgment was "on the notes involved in this case." The court further found

that Truman R. Sample "was indebted to the Caroline Ada Sample, Incompetent, Estate in the amount of $87,705.52 plus interest on November 12, 1965, (the date Truman R. Sample was appointed the Guardian of the Caroline Ada Sample Estate)" and then the court went on to describe the seven promissory notes as being the basis for that indebtedness. Assuming as true all of the facts stated in the affidavits, exhibits and request for admissions, do such facts support the findings of the trial court and constitute unassailable proof that plaintiff is entitled to judgment as a matter of law? We think not. We bear in mind the well-settled rule that we must view the record in the light most favorable to the party against whom summary judgment is rendered. Anderson v. Steurer, Mo., 391 S.W.2d 839. We also recognize that summary judgment is a drastic remedy requiring great care in its use. Anderson v. Steurer, supra. In this light, we examine plaintiff's proof.

█  The first exhibit filed in support of the motion for summary judgment was the copy of the Georgia judgment. This foreign judgment is completely void of any showing that it was based on the notes in question. None of the other affidavits, exhibits or admissions purports to establish this fact. Therefore, the finding by the trial court that the Georgia judgment was "on the notes involved in this case" was clearly erroneous. The Georgia judgment would only serve as proof of the fact that Truman R. Sample was indebted to the estate of Ada C. Sample in the sum of $103,454.07 on the date of the rendition of the judgment on November 22, 1969. This date, of course, was some four years after the guardian's appointment.

█  The affidavit of Truman R. Sample which was attached to the motion for summary judgment simply stated that on the date of the opening of the guardianship he was solvent and that his net worth exceeded $125,000. This affidavit would prove the solvency of the guardian at the time in question, but it would not otherwise support the findings of the trial court.

The third exhibit filed with the motion for summary judgment was the confession of judgment of Truman R. Sample. This instrument was merely a consent by Truman R. Sample that judgment be entered against him in the Circuit Court of St. Francois County *on the Georgia judgment*. Since the Georgia judgment was not shown to be relevant to this cause, a confession of judgment based thereon would likewise be irrelevant.

We move now to the supporting affidavits filed subsequent to the filing of the motion for summary judgment. Suffice it to say that the affidavit of Anna L. Beck would not prove any of the allegations of the petition, nor would it in any manner support the findings of fact set forth in the order for summary judgment. The affidavits of the various bank officers would establish that Truman R. Sample "received" or "used" the proceeds of the various notes. These latter affidavits, with the accompanying bank records, would also support a finding that Truman R. Sample "signed" all but one of the notes in question. But proof of such facts does not render the guardian liable as a matter of law for reasons which we will discuss later in this opinion.

█  The last matter to be considered is the significance of the statements contained in the bond application. The guardian stated in that application that he was indebted to the estate for $50,000. Obviously this is an amount substantially less than the $95,939.62 for which summary judgment was entered. A judgment in the latter amount certainly could not be justified by the facts set forth in the bond application. After stating in the application that he was indebted to the estate for $50,000, Truman R. Sample went on to describe the indebtedness as being a "Signature Note (in Safety Dept. Box)". This description would not be consistent with the allegations of the petition or the find-

ing of the trial court regarding the seven promissory notes. It was, in fact, a reference to only one note apparently in the possession of Truman R. Sample either personally or in his capacity as guardian. None of the notes mentioned in the petition was in the amount of $50,000 or payable to the ward. Such a note would not be relevant to the administrator's claim based on the seven notes payable to various banks. We find, therefore, that the bond application suggests rather than resolves material fact issues.

██ The respondent has cited the case of State ex rel. Welch v. Morrison, 244 Mo. 193, 148 S.W. 907, in support of his assertion that the surety on a guardian's bond is liable on that bond when the guardian is solvent and in debt to his ward at the time of his appointment and fails to satisfy the indebtedness. The appointment of the guardian and his solvency at the time have been established by the various affidavits and exhibits filed by the respondent. But the crucial omission in the instant case is proof of the debt *as between the guardian and the ward*. The Welch case, supra, deals with the situation involving a note executed by a maker subsequently to become the payee's executor. In such a case the liability of the maker of the note to the payee is clear. In the case before us, however, there was absolutely no allegation or proof of any contractual relationship or indebtedness *as between the guardian and the ward*. The proof that Truman R. Sample and Caroline Ada Sample "signed" these notes jointly and that Truman R. Sample "received" or "used" the proceeds would not establish the liability of one maker to the other a matter of law. The reasons that a mother and son might jointly execute notes for which the son receives the proceeds are as varied as human experience itself. The son's liability to the mother must be founded on a promise to pay which must be alleged and proven. Such proof does not exist in the instant case. We further note that, regardless of the other matters of proof

heretofore discussed, there is no showing in the record that the notes in question had matured on November 12, 1965, to support the finding of the trial court that the guardian was indebted to the ward *on the date of his appointment*.

Accordingly, we hold that there are genuine issues as to material facts which remain unresolved by the affidavits, exhibits and request for admissions and that summary judgment is therefore precluded.

The judgment is reversed.

All of the Judges concur.