STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY and State Farm Fire & Casualty Company, Plaintiffs/Respondents,

v.

Michael J. ESSWEIN and Glennetta Esswein, Defendants/Respondents,

and

Chrysler Insurance Company, Defendant/Appellant.

No. ED 72990.

Missouri Court of Appeals, Eastern District, Division Two.

July 5, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 2000.

Case Transferred to Supreme Court Oct. 3, 2000.

Case Retransferred to Court of Appeals March 20, 2001.

Original Opinion Reinstated May 2, 2001.

Thomas C. Walsh, David S. Slavkin, Bryan Cave LLP, St. Louis, for appellants.

Paul E. Kovacs, Thomas B. Weaver, David G. Ott, Jeffery T. McPherson, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for respondent.

## OPINION

JAMES R. DOWD, Presiding Judge.

Defendant Chrysler Insurance Company ("Chrysler") appeals from a declaratory judgment, because it declared that the coverage provided by Chrysler under its Dealer Daily Rent–A–Car insurance policy issued to Chrysler Credit Corporation was primary and had no limits of liability with respect to an accident involving a vehicle rented by Mrs. Glennetta Esswein from King Auto Leasing ("King Auto Leasing"). Reversed and rendered.

## FACTS

On March 3, 1993, Mrs. Esswein rented a van from King Auto Leasing in St. Louis, Missouri. She signed a standard form rental agreement that contained a provision for third party liability insurance which provided coverage for all sums an insured must pay as damages because of bodily injury or property damage. The limits of liability contained in the rental agreement, as provided by Paragraph 10, were the minimum required by the state in which the vehicle was rented. Paragraph 10 also states that in the event coverage is imposed for the benefit of someone other than the Renter, the limit of coverage shall be that of the state in which the accident occurred. The State of Missouri requires every vehicle owner to carry a minimum of $25,000 in liability insurance per vehicle. Section 303.190 RSMo 1994. Ohio's minimum limit of liability coverage is $12,500. OH ST Section 4509.51.[1]

---

1. Because of the language of paragraph 10 of the rental agreement, there is some question as to which state's limit should be applied in this case—Missouri or Ohio. However, such a

Mrs. Esswein and several members of her family, including her son Michael Esswein, a twenty-one-year-old seminary student, planned to use the van to take a trip to Connecticut. On March 5, 1993, while she was driving through Ohio, the van skidded off the highway into a ditch and overturned. Michael suffered severe injuries and was rendered quadriplegic.

At the time of the accident, Mrs. Esswein was insured by State Farm Mutual Automobile Insurance Company under three policies each with a limit of liability for bodily injury of $300,000 per person and $300,000 per accident and by State Farm Fire and Casualty Company under a personal liability umbrella policy with a limit of liability of $1,000,000. Additionally, King Auto Leasing and its rental customers were covered by a master Commercial Auto Coverage Policy, No. CAR10100, issued by Chrysler Insurance to Chrysler Credit Corporation to provide liability insurance for vehicles owned by Chrysler dealers participating in the Dealer Daily Rent–A–Car Program. Mrs. Esswein qualifies as an insured according to the language of the policy which defines "insured" as: "Anyone else [Mrs. Esswein] while using with your permission a covered 'auto' you [Chrysler dealers] own . . . ." The rental agreement between Mrs. Esswein and King Auto Leasing gave her express permission to use the vehicle.

After the accident, Michael asserted a claim against Mrs. Esswein, alleging that she negligently caused bodily injury to him. Mrs. Esswein called upon State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm") to

defend and indemnify her against Michael's claim.

On January 31, 1994, State Farm instituted this declaratory judgment action against Mrs. Esswein and Michael seeking a declaration of the parties' rights and liabilities under the State Farm policies. Originally, State Farm requested a determination of whether its liability was limited to $25,000 by reason of a household exclusion in its policies which limited coverage to that amount for "bodily injury to any insured or member of an insured's family residing in insured's household." State Farm amended its petition on August 5, 1994 to add Chrysler as a defendant and to request a further declaration that the Chrysler policy provided primary coverage for the accident and that Chrysler was liable for the $25,000 per person coverage required by the Missouri Motor Vehicle Responsibility Law. On April 3, 1996, an evidentiary hearing was held primarily to determine if Michael was a member of the household of Mrs. Esswein and Lawrence Esswein and thus subject to the exclusionary clause.

On May 13, 1996, Michael filed a cross-claim against Mrs. Esswein seeking to recover for personal injuries he sustained in the accident. On May 28, 1996, State Farm filed its Second Amended Petition asking the court to declare that Chrysler carried the primary obligation to defend Mrs. Esswein for all amounts she would be legally liable to pay in damages to Michael as a result of the accident. State Farm asserted that Chrysler's policy provides for no limits of liability because Endorsement Three, which sets forth the limits of

---

determination can be resolved from a reading of the language at the bottom of Endorsement Three of the insurance policy at issue which states that coverage is in the amount of the statutorily required minimum in the state in which the covered auto is being used. It is

uncontested that at the time of the accident the automobile was being used in Ohio, therefore, if there is a limit of liability in this case, as will be fully discussed below, it is the $12,500 minimum liability limit required in Ohio.

liability coverage, does not apply to vehicles driven in Ohio. Endorsement Three, a copy of which is attached hereto and marked as Exhibit A, reads in pertinent part as follows:

POLICY NUMBER: CAR10100

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CA 99 27 01 87

**SPLIT LIABILITY LIMITS**

DOES NOT APPLY IN OHIO

\*     \*     \*     \*     \*     \*

**THE LIABILITY COVERAGE LIMIT OF INSURANCE APPLICABLE TO THE SCHEDULE ABOVE IS THE MINIMUM FINANCIAL RESPONSIBILITY LIMIT ESTABLISHED BY THE FINANCIAL RESPONSIBILITY LAW OR OTHER APPLICABLE STATUTE ("STATUTORY LIMITS") OF THE STATE OR OTHER JURISDICTION IN WHICH A COVERED "AUTO" IS BEING USED.**

On July 22, 1996, Mrs. Esswein filed a crossclaim against Chrysler seeking a declaration that it was obligated to defend and indemnify her against Michael's claim because their policy provided primary coverage for the accident. She also filed a counterclaim against State Farm seeking a declaration that State Farm was obligated to defend and indemnify her for Michael's claim to the extent Chrysler's policy does not provide coverage.

The trial court heard final arguments on January 30, 1997 and the case was taken as submitted. Chrysler submitted proposed Findings of Fact, Conclusions of Law, Declaratory Judgment and a legal memorandum. Among the exhibits were Plaintiff's Exhibit 5, the policy of insurance issued by Chrysler, and Plaintiff's Exhibit 6, the rental agreement.

On February 13, 1997, the trial court issued Findings of Fact, Conclusions of Law and Declaratory Judgment. The trial court found that at the time of the accident Michael lived at the seminary and was not a resident of the household of Mrs. Esswein and Lawrence Esswein. Accordingly, the trial court found that Michael was not subject to the household exclusion and that State Farm had limits of liability for Michael's claim against Mrs. Esswein of $300,000 and $1,000,000. The court concluded, however, that State Farm's policies provided excess coverage. Subsequently, Michael settled with State Farm for $1,300,000, subject to reimbursement of any amount recovered from Chrysler up to the amount of the settlement.

As to Chrysler, the trial court found that Chrysler's policy of insurance provided primary coverage and contained no limits of liability for accidents that take place in the State of Ohio. The court reasoned that the limit of insurance section of the liability portion of the policy states that the limit of insurance under the liability coverage is the amount shown for liability coverage on the declarations page. The court noted, however, that the policy does not indicate an amount for liability coverage on the declarations page, but rather refers to Endorsement Three for limitations of liability. Endorsement Three, which is attached to this opinion and marked as Exhibit A, declares that it modifies insurance provided under the policy. The words "DOES NOT APPLY IN OHIO" appear directly under the phrase "SPLIT LIABILITY LIMITS" located near the top of Endorsement Three. The trial court concluded that the words "DOES NOT APPLY IN OHIO" refer to all of Endorsement Three, thereby voiding in Ohio the language at the bottom of Endorsement Three setting

forth the minimum statutory limits. Accordingly, the trial court found the Chrysler policy contained no limits of liability for accidents in Ohio and that Chrysler must indemnify Mrs. Esswein to the full extent of any and all amounts owed by her to Michael as a result of the accident.

Chrysler Insurance declined the opportunity to defend Mrs. Esswein against Michael's cross claim and, on May 13, 1997, Mrs. Esswein consented to the entry of judgment against her and in favor of Michael in the amount of $5,700,000 conditioned on a covenant to execute only on the insurance policies. The trial court approved the settlement and Chrysler appeals.

### STANDARD OF REVIEW

■ In reviewing a declaratory judgment, we will sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *State Farm Mutual Auto. Ins. Co. v. Flanary,* 879 S.W.2d 720, 721 (Mo.App. S.D.1994). The trial court's interpretation of a contract involves legal conclusions that are not binding on appeal. *Goldstein & Price, L.C. v. Tonkin & Mondl, L.C.,* 974 S.W.2d 543, 551 (Mo.App. E.D.1998). Therefore, appellate review is de novo, and no deference is given to the trial court's interpretation of the contract.

### JURISDICTION

■ Initially, we address Michael's assertion that this court lacks jurisdiction over this case because Chrysler's appeal was untimely. The chronology of events that gives rise to Michael's jurisdictional argument is as follows:

On February 13, 1997, the trial court issued its "Findings of Fact, Conclusions of Law and Declaratory Judgment" finding that the Chrysler policy had no limit of liability in Ohio. On March 25, 1997, Chrysler filed a Notice of Appeal in this court. On May 13, 1997, Michael filed a Motion to Dismiss the appeal because the trial court's "Findings of Fact, Conclusions of Law and Declaratory Judgment" were not final and therefore not appealable. On May 21, 1997, this court held Michael's Motion to Dismiss appeal 72288 in abeyance until further documents could be filed. On June 18, 1997, when those documents were filed, this court dismissed appeal 72288 without prejudice for lack of a final judgment.

On May 13, 1997, Mrs. Esswein filed in the circuit court her consent to the entry of a judgment against her in favor of Michael for $5,700,000. On May 19, 1997, without notice to the parties, Judge O'Toole signed the consent judgment "so ordered."

On May 14, 1997, before Judge O'Toole signed the consent judgment, Michael filed a Motion for Approval of Settlement. All parties were notified and participated in a hearing on Michael's Motion for Approval of the Settlement before Judge Herbert Lasky on May, 27, 1997. Judge Lasky sustained Michael's Motion for Approval of Settlement on July 1, 1997.

Did the consent judgment become final on May 19, when Judge O'Toole signed the judgment, or on July 1, when Judge Lasky sustained Michael's Motion for Approval of the Settlement? Fixing the date the judgment became final allows us to determine whether Chrysler's notice of appeal was filed within the forty days allotted by Supreme Court Rules 81.04 and 81.05.[2]

2. Rule 81.05 provides that a judgment becomes final at the expiration of thirty days after the entry of such judgment. Rule 81.04 further mandates that a notice of appeal must

■ "An appealable judgment disposes of all issues in a case, leaving nothing for future determination." *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995). The legislature has defined a "judgment" as "the final determination of the right of the parties in an action." Section 511.020, RSMo 1994. What is or is not a final judgment or order depends on the circumstances of each case. *State ex rel. Fletcher v. Amsterdam Cas. Co.*, 430 S.W.2d 642, 645 (Mo.App.1968).

The circumstances of this case clearly require a conclusion that the judgment became final and appealable on July 1, 1997, when Judge Lasky sustained the Motion for Approval of Settlement. Judge O'Toole's signature on the consent judgment on May 19, 1997 did not constitute a final determination of the parties' rights. The Missouri Supreme Court held in *Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810 (Mo.1997), that an insurer had an absolute right to challenge a settlement on the ground that the settlement was unreasonable. The "reasonableness" hearing before Judge Lasky was that which disposed of the last issue in the case and rendered the judgment final. It was not until that hearing and Judge Lasky's decision to sustain Michael's Motion for Approval of Settlement that the rights of the parties were finally determined. Thus, the consent judgment became an appealable judgment on July 1, 1997.

■ This conclusion is fully consistent with our prior dismissal of Chrysler's first appeal. This court dismissed the first appeal on June 18, 1997 for lack of a final judgment. The law of the case doctrine provides that a previous holding in a case constitutes the law of the case and precludes this court from relitigating that issue after remand and subsequent appeal.

*Kansas City v. Keene Corp.*, 855 S.W.2d 360, 366 (Mo. banc 1993). The law of the case doctrine allows litigants involved in ongoing litigation to make crucial strategy decisions based on a final adjudication of known disputes. To rule otherwise would cast the parties adrift and make ultimate, coherent resolution illusory.

■ Our dismissal on June 18, 1997, was a ruling that the document signed by Judge O'Toole on May 19, 1997 was not a final, appealable judgment. This is the law of the case and *Gulf Insurance Co. v. Noble Broadcast* makes clear that our dismissal was mandated under Section 511.020. Accordingly, Judge Lasky's approval of the settlement and entry of judgment on July 1, 1997 was the date the judgment became appealable. Chrysler filed its notice of appeal on August 8, 1997, within the forty-day period set forth in Rules 81.04 and 81.05. Thus, Chrysler's appeal is timely.

### PRESERVATION

Respondents further argue that Chrysler has not preserved any issue for review. Respondents assert that, on appeal, Chrysler has changed its issues and theories originally presented to the trial court.

■ Respondents are correct in their assertion that review on appeal is limited to issues and theories heard by the trial judge. *Segraves v. Consolidated Elec. Co-op.*, 891 S.W.2d 168, 171 (Mo.App. E.D. 1995). Parties are bound on appeal by the positions they took in the trial court. *Mason v. Mason*, 873 S.W.2d 631, 636 (Mo. App. E.D.1994).

In order to determine whether Chrysler has preserved an issue for appeal, it is first necessary to ascertain what issue Chrysler

---

be filed within ten days after the judgment becomes final. Therefore, the total time limit

to file an appeal is forty days from entry of final judgment.

is raising before this court. The ultimate issue Chrysler raises is whether their policy provides unlimited coverage to Mrs. Esswein or whether Chrysler's coverage is limited to the minimum amount of liability insurance required in Ohio.

The question as to how much coverage Chrysler should provide has been at issue in this lawsuit at least since the filing of State Farm's Second Amended Petition which alleges at paragraph 12 that Chrysler's liability is unlimited because of the language of Endorsement Three. Chrysler's answer to the petition denies that allegation. By denying an allegation in plaintiff's petition, defendant puts the issue of that allegation before the trial court. *Sample's Estate v. Travelers Indem. Co.*, 492 S.W.2d 829, 833 (Mo. banc 1973). The denial, when considered with the evidence, arguments and proposed findings of fact and conclusions of law, fully preserves the coverage issue for our determination. Furthermore, no motion for new trial is necessary to preserve an issue in a judge tried case.

Respondents further argue that Chrysler has changed its theory on appeal from that set forth at the trial level. They contend that at trial Chrysler relied solely on the language of Endorsement Three, rather than the rental agreement or other portions of the policy, to support the position that coverage was limited to the statutory minimum amount required in all states. Therefore, Respondents argue Chrysler has not preserved these theories for appeal and that we should not consider the rental agreement or other language in the policy in our determination of this case.

Our review of the record reveals that Chrysler has consistently argued that the insurance policy read together with the rental agreement provides the minimum amount of liability insurance required by every state, Ohio included. The entire policy as well as the rental agreement was received into evidence and relied upon by Chrysler at the trial level. Chrysler relied upon the rental agreement in its proposed Findings of Fact, Conclusions of Law and Proposed Declaratory Judgment, stating "[b]y way of the language of paragraph 10 of the rental agreement, King Auto Leasing informed Glennetta Esswein that she . . . was covered by a . . . policy affording her limits equal to the minimum financial responsibility limits." Paragraph 10 of the Rental Agreement was also set forth verbatim by State Farm in their Amended Petition for Declaratory Judgment.

The entire policy and rental agreement were placed squarely before the trial court for its consideration. Therefore, Chrysler's theories on appeal, insofar as they relate to the language of the policy as a whole and the rental agreement, were preserved for our review.

However, Respondents are correct that Chrysler makes two entirely new arguments in its briefs in this court, namely that the policy should be reformed according to the Restatement of Contracts and that the trial court's interpretation of the policy violates Ohio's public policy. These theories were not presented to the trial court and are stricken because they were not preserved for consideration by this court. *Segraves v. Consolidated Elec. Coop.*, 891 S.W.2d at 171.

### ANALYSIS

Does the phrase "DOES NOT APPLY IN OHIO" refer to all of Endorsement Three or only modify the heading "SPLIT LIABILITY LIMITS"? In order to resolve this central issue, we must first determine whether the policy is ambiguous. The Missouri Supreme Court recently declared that "[a]n ambiguity exists

when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy. Language is ambiguous if it is reasonably open to different constructions." *Martin v. U.S. Fidelity and Gaur. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). When determining whether a contract of insurance is ambiguous, the language will be viewed according to the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

"When the court can determine the meaning of a written contract without any guide other than knowledge of the simple facts on which, from the nature of language in general, its meaning depends, the terms of the contract will be deemed unambiguous. To be unambiguous, a contract must be reasonably capable of only one construction . . ." 11 *Williston on Contracts* Section 30:4 (4th ed.). When applying the "two reasonable interpretations" concept to the language in question it is clear that Mrs. Esswein's proffered interpretation cannot be gleaned from a plain reading of the language at issue. And Chrysler's theory is also unsustainable because a plain reading of the words in question does not communicate that which Chrysler claims nor does the policy define the phrase "SPLIT LIABILITY LIMITS."

The failure to define "SPLIT LIABILITY LIMITS" is significant because the parties seek a determination. of what does not apply in Ohio—all of Endorsement Three or only split liability limits. (See attached Exhibit A.) While there is no uncertainty in the meaning of those five words, what the phrase refers to is unclear from a plain reading of the Endorsement. Mrs. Esswein asserts "DOES NOT APPLY IN OHIO" applies to all of Endorse-

ment Three, thereby making coverage unlimited in Ohio. Chrysler contends "DOES NOT APPLY IN OHIO" applies only to the heading directly above it—"SPLIT LIABILITY LIMITS." The term "SPLIT LIABILITY LIMITS" is not defined in the policy. Furthermore, "SPLIT LIABILITY LIMITS" is not a phrase that could be easily understood by a layperson. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). However, Chrysler claims in its brief that "SPILT LIABILITY LIMITS" when read together with the phrase "DOES NOT APPLY IN OHIO" means that there is no difference in coverage in Ohio as between each person, each accident, and property damage. Ironically, Chrysler's explanation of "SPLIT LIABILITY LIMITS" is itself indistinct and uncertain from a layperson's point of view.

■ It is unclear from a plain reading of the policy using a layperson's understanding of its terms to what "DOES NOT APPLY IN OHIO" refers. Neither Mrs. Esswein's nor Chrysler's interpretation can be positively gleaned from the language of Endorsement Three with any certainty. When neither proponent can direct the court to a reasonable theory of the meaning of the questioned language which can be extracted from the language itself, the result is "indistinctness and uncertainty" and we must declare the contract provision to be ambiguous.

Because of this ambiguity we must determine the applicable rule of contract interpretation. Chrysler argues that it is the intent of the parties that governs our decision, while Mrs. Esswein urges us to apply the doctrine of *contra proferentem* and adopt her proposed interpretation. An examination of these two established tools of interpretation and their interplay is essential to our conclusion. ·

■ The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo. banc 1990); *Schwartz v. Custom Printing Co.,* 926 S.W.2d 490, 493 (Mo. App. E.D.1996). "In order to determine the intent of the parties, it is often necessary to consider not only the contract between the parties, but subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995) (internal quotations omitted). If a contract is deemed ambiguous, resort may be had to extrinsic evidence to determine the true intent of the parties to the contract and resolve the ambiguity. *Modine Manufacturing Co. v. Carlock,* 510 S.W.2d 462, 467 (Mo. banc 1974).

■ In contrast, Mrs. Esswein argues that the doctrine of *contra proferentem* should apply. That doctrine provides that where provisions of an insurance policy are ambiguous, they are construed against the insurer. *Behr v. Blue Cross Hospital Service, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986). However, the rule of *contra proferentem* should not be applied where the intent of the parties can be ascertained from other sources. *Missouri Consol. Health Care Plan v. BlueCross BlueShield of Missouri,* 985 S.W.2d 903, 910 (Mo.App. W.D.1999); 4 *Williston on Contracts* Section 32:12 (4TH ed.); 3 *Corbin on Contracts* Section 559; 2 *Couch on Insurance* Section 15:83 (2nd ed.); *Saturn Oil & Gas Co. v. Northern Natural Gas Co.,* 359 F.2d 297, 302 (8th Cir.1966); *Carey Canada, Inc. v. Columbia Gas Co.,* 940 F.2d 1548 (D.C.Cir.1991); *Schering v. Home Ins. Co.,* 712 F.2d 4 (2d Cir.1983).

■ Here there is evidence elsewhere in the policy as well as the extrinsic rental agreement that illustrates the parties' intentions. Therefore, we find it would be improper to apply the doctrine of *contra proferentem* against Chrysler solely because it drafted the policy while ignoring relevant evidence of the parties' intentions. "[T]he rule [of *contra proferentem* ] does not justify a court in adopting an interpretation contrary to that asserted by the drafter simply because of their status as the drafter." 4 *Williston on Contracts* Section 32:12 (4TH ed.). Accordingly, we look to the policy as a whole and any relevant extrinsic evidence for proof of the parties' intent.

Endorsement Three itself provides assistance. The language at the bottom of Endorsement Three provides: "THE LIABILITY COVERAGE LIMIT OF INSURANCE APPLICABLE TO THE SCHEDULE ABOVE IS THE MINIMUM FINANCIAL RESPONSIBILITY LIMIT ESTABLISHED BY THE FINANCIAL RESPONSIBILITY LAW OR OTHER APPLICABLE STATUTE ('STATUTORY LIMITS') OF THE STATE OR OTHER JURISDICTION IN WHICH A COVERED 'AUTO' IS BEING USED." Additional assistance is found in the policy. Section IIA(2)(b) of the policy, while not binding, is instructive on the question of intent. It reads:

While a covered auto is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used . . . .

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

The declared purpose of these provisions is to provide the minimum amount of liability insurance required to comply with each state's financial responsibility law.

We find no affirmative evidence in the policy that suggests an intent to provide unlimited liability coverage in Ohio or anywhere else. The language at the top of Endorsement Three and the manner in which it is organized on the page, while cryptic and confusing, does not communicate expressly or impliedly an intent to provide unlimited coverage. Consequently, it cannot serve to void Endorsement Three in its entirety. In contrast, we are unable to find anything in the policy, other than the questioned language, that would allow a conclusion that Chrysler intended to limit its liability to the statutory minimum in every state, with the exception of Ohio, where there would be no limit to its liability coverage.

The rental agreement states a clear intent to provide the minimum limits of liability. It constitutes the entire contract between King Auto Leasing and Mrs. Esswein and was the only document viewed by Mrs. Esswein. Though the rental agreement is extrinsic evidence, it is also the very document that gives Mrs. Esswein her rights under the policy. It establishes the critical facts that Mrs. Esswein rented the van and that the van was covered by the insurance policy in question at the time of the accident. The assertion that we should consider the rental agreement to establish these prerequisites to coverage, but that the language of Paragraph 10 should be ignored when reaching the question of the amount of coverage is fatally inconsistent. Since the rental contract contains extrinsic evidence which sheds light on the parties' intentions and expectations in this case, we are compelled to consider it, along with the insurance policy, for any indication of the contracting parties' intent and for any evidence that would give a third-party beneficiary an expectancy of coverage in the amount that Mrs. Esswein urges. *Butler v. Mitchell–Hugeback, Inc.,* supra. Paragraph 10 of the rental agreement provides in relevant part as follows:

*THIRD PARTY LIABILITY PROTECTION.* Anyone authorized by this Agreement to drive Vehicle is covered by an automobile liability insurance policy AGAINST LIABILITY TO THIRD PARTIES ONLY (NOT INCLUDING, TO EXTENT PERMITTED BY LAW, ANY OF SUCH DRIVER'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING IN THEIR HOUSEHOLD), for bodily injury, death or property damage caused by or arising from use or operation of Vehicle as permitted by this agreement. **The amount of coverage provided under this Agreement is equal to the minimum financial responsibility limits established by the Financial Responsibility law or other applicable statute ("Statutory Limits") of the state or other jurisdiction in which Vehicle was rented.... In the event that coverage is imposed, by operation of law, for the benefit of any person other than Renter, then limits of such coverage shall be Statutory Limits of state or other jurisdiction in which accident occurred.** (bold emphasis added).

The sentences in boldface above plainly limit the amount of liability coverage to the statutory minimums of either the state where the van was rented or the state in

which the accident occurred.[3] Mrs. Esswein did not testify as to what her intent was when signing the rental agreement. In any event, it would be unreasonable to conclude that Mrs. Esswein would have contemplated that by virtue of signing a standard rental agreement, she would receive unlimited liability coverage in Ohio alone.

It is abundantly clear that a third-party beneficiary like Mrs. Esswein need not have actual knowledge of the terms and conditions of an insurance policy nor even be aware that a policy exists in order to fall within the ambit of the policy's coverage provisions. *Peters v. Employers Mutual Casualty Co.*, 853 S.W.2d 300, 301 (Mo.banc 1993). Conversely, signing a contract which expressly provides that the coverage is limited to the statutory minimum serves to eliminate any expectation to the contrary. In this case, the undisputed evidence is that Mrs. Esswein entered into a contract, the rental agreement, that expressly provided for the statutory minimum limits of liability. The rental agreement, which Mrs. Esswein signed and presumably read, states in clear and unambiguous language that Mrs. Esswein was covered by an insurance policy but only in the amount of the "minimum financial responsibility limits." Thus, Mrs. Esswein, as a third-party beneficiary to the insurance policy, is charged with knowledge of the limits of liability via the rental agreement and cannot argue that she expected anything more than those limits. Further, this court has held in the past that when there is an ambiguity, the insureds are entitled to a favorable resolution of that ambiguity only if that

resolution is consistent with their objective and reasonable expectations as to what coverage would be provided. *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 316 (Mo.App. E.D.1999).

Though it remains unclear what the term "SPLIT LIABILITY LIMITS" means, neither Mrs. Esswein nor State Farm claims those words mean "limits of liability," "statutory minimums," or "all of Endorsement Three." Simply put, "SPLIT LIABILITY LIMITS" must carry one of these meanings in order to reach a conclusion that the statutory minimum limits of liability required in Ohio do not apply to this accident.

After an examination of the entire policy and the rental agreement, we hold that "DOES NOT APPLY IN OHIO" refers to the phrase "SPLIT LIABILITY LIMITS" and does not serve to void all of Endorsement Three. Therefore, the language at the bottom of Endorsement Three setting forth Chrysler's limit of liability as the statutory minimum required in every state is valid and applicable to this accident.

This opinion is limited to the unique factual situation before us. It should be noted that this opinion does not stand for the alteration of the principles underlying the doctrine of *contra proferentem* as applied to insurance contracts. To the contrary, we leave intact the long line of cases affording the insured a favorable interpretation of ambiguous provisions when the insured's interpretation is plausible and supported by the other language in the policy or relevant extrinsic evidence. *Peterson v. Continental Boiler Works, Inc.*,

---

**3.** As stated in footnote 1, the language of the rental agreement suggests that Missouri's $25,000 limit may apply in this case. However, it is ultimately the insurance policy which we are called upon to interpret and the language at the bottom of Endorsement Three is

clear that it is the statutorily required minimum limit of liability of the state in which the accident occurred that applies. Therefore, it is Ohio's limit of $12,500 that applies in this case.

783 S.W.2d 896, 901 (Mo. banc 1990); *Schwartz v. Custom Printing Co.,* 926 S.W.2d 490, 493 (Mo.App. E.D.1996); 4 *Williston on Contracts Section* 32:12 (4TH ed.). Indeed, nothing prohibits the parties to an insurance contract from agreeing that the insurer will assume the entire risk of a given undertaking.

Nor should this opinion be construed as a stamp of approval of the language Chrysler chose to employ in this inartfully drafted policy. While Chrysler has survived their use of insurance industry-speak today, they would be wise to avoid such language in the future.

### CONCLUSION

We hold that the trial court erred in interpreting the Chrysler policy to provide unlimited coverage. We hold that the parties intended to contract for liability insurance in the amount of the statutory minimum in the state in which the vehicle was rented. Accordingly, the trial court's judgment is reversed. Pursuant to Rule 84.14, we are authorized to finally dispose of this case unless justice otherwise requires. *Meiners v. Meiners,* 858 S.W.2d 788, 791 (Mo.App. E.D.1993). On review, we may dispense with the remand process and render the judgment that should have been rendered by the trial court. Because the accident occurred in Ohio, we declare that Chrysler's insurance policy provided $12,500 in liability coverage, the minimum amount of liability insurance required by Ohio's Motor Vehicle Financial Responsibility Law. OH ST Section 4509.51. Judgment is accordingly reversed and rendered.

LAWRENCE G. CRAHAN, J., concurs in result only.

RICHARD B. TEITELMAN, J., concurs in result only.

CA 2573
(1-87)

POLICY NUMBER: CAR 10100

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CA 99 27 01 87

### SPLIT LIABILITY LIMITS
DOES NOT APPLY IN OHIO

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>MAY 1, 1992            at 12:01 A.M. standard time | ENDORSEMENT NO. 3 |
|---|---|
| Named Insured<br>CHRYSLER CREDIT CORPORATION | Countersigned by |

(Authorized Representative)

### SCHEDULE

| "Bodily Injury" Liability: | $ SEE<br>BELOW | Each Person |
|---|---|---|
| | $ | Each "Accident" |
| "Property Damage" Liability: | $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The LIABILITY COVERAGE Limit of Insurance is replaced by the following:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the limit of insurance is as follows:

1. The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident", including all damages claimed by any one person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "Bodily Injury" Liability shown in the Schedule for each person.

2. Subject to the limit for each person, the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit of "Bodily Injury" Liability shown in the Schedule for each "accident".

3. The most we will pay for all damages resulting from "property damage" caused by any one "accident" is the limit of "Property Damage" Liability shown in the Schedule.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

THE LIABILITY COVERAGE LIMIT OF INSURANCE APPLICABLE TO THE SCHEDULE ABOVE IS THE MINIMUM FINANCIAL RESPONSIBILITY LIMIT ESTABLISHED BY THE FINANCIAL RESPONSIBILITY LAW OR OTHER APPLICABLE STATUTE ("STATUTORY LIMITS") OF THE STATE OR OTHER JURISDICTION IN WHICH A COVERED "AUTO" IS BEING USED. √

